UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X
                                                        :
JAMEL "ABDULA" ALLEN,
                                    Plaintiff,           :          02 Civ. 4373 (RJH) (DF)

          -against-                                     :          **REPORT AND**
                                                                   **RECOMMENDATION**
THE CITY OF NEW YORK, CAPT. SAKELLARDIS,                 :
C.O. CRESPO, C.O. MERCED, and C.O. REYES,
                                                        :
                                    Defendants.
-----------------------------------------------------------------------X

**TO THE HONORABLE RICHARD J. HOLWELL, U.S.D.J.:**

## INTRODUCTION

In this action pursuant to 42 U.S.C. § 1983, defendants the City of New York (the

"City"), Captain Sakellardis, and Correction Officers Crespo, Merced and Reyes (collectively

"Defendants") have moved for summary judgment dismissing the claims of *pro se* plaintiff

Jamel "Abdula" Allen ("Allen"). Liberally construed,[1] Allen's claims principally allege that,

while being held in custody at Rikers Island, he was assaulted by correction officers and then

falsely arrested and maliciously prosecuted in connection with the incident, all in violation of his

constitutional rights. For the reasons stated below, I respectfully recommend that the

Defendants' motion for summary judgment be granted in part and denied in part.

---

[1] Where, as here, a plaintiff is proceeding *pro se*, the Court must construe the plaintiff's
pleadings liberally, applying a less stringent standard than when a plaintiff is represented by
counsel. *Branham v. Meachum*, 77 F.3d 626, 628-29 (2d Cir. 1996).

## BACKGROUND

### A.    Events of April 16, 2001

_____ Many of the facts in this case are undisputed, including the background of the events in

question.  In 1999, while Allen was on parole after serving prison time for a state drug

conviction, he was arrested on a new, federal weapons possession charge.  (Declaration of

Seth D. Eichenholtz ("Eichenholtz Decl."), Ex. C (Transcript of deposition of Jamel "Abdula"

Allen, dated Mar. 28, 2005), at 13-22.)  In 2000, Allen was convicted of the federal crime and

sentenced to federal prison.  (*Id.* at 17-18.)  Before commencing his federal sentence, however,

he was first transferred to Rikers Island, a New York City jail, in order to face a state parole

revocation hearing.  (Allen's Local Rule 56.1 Statement, dated June 27, 2006 ("Allen Rule 56.1

Statement") (Dkt. 70), ¶ 3.)

On April 16, 2001, Allen was apparently in the process of being transferred from one

Rikers Island facility to another, when he was informed by defendant Correction Officer Reyes

("Reyes") that he was going to be moved into a dormitory area instead.  (*Id.* ¶ 9; Eichenholtz

Decl., Ex. C, at 37-38.)  Allen did not want to be placed in a dormitory, and he told Reyes that he

would refuse to go there.  (Allen Rule 56.1 Statement ¶ 10.)  Other correction officers became

involved, and Allen was given a direct order by the officers to move into the dormitory.  (*Id.* ¶¶

12-22; Eichenholtz Decl., Ex. C, at 40.)  Eventually, after Allen repeatedly stated that he was

refusing the direct order, defendants Correction Officer Crespo ("Crespo") and Captain

Sakellardis ("Sakellardis") tried, physically, to place him in the dormitory.  (Eichenholtz Decl.,

Ex. C., at 39-40; Defendants' Local Rule 56.1 Statement, dated Dec. 5, 2005 ("Def. Rule 56.1

Statement"), ¶¶ 7-9.)  Allen fully admits that he refused a direct order, and does not dispute that

all these two officers did was attempt to move him into the dormitory.  (Eichenholtz Decl., Ex. C, at 44-45.)  He does not contend that either of the Officers punched or kicked him, or otherwise used physical force against him (*id.*); he merely complains that they tried to "pull" him into the dormitory area (*id.* at 41; Allen Rule 56.1 Statement ¶ 25).  Allen also freely concedes that he resisted their efforts to do so, testifying at his deposition that he "pulled back" the entire time, saying "I'm not going inside the dorm."  (Eichenholtz Decl., Ex. C, at 42; Allen Rule 56.1 Statement ¶ 26.)

The only facts about this incident that appear to be disputed by the parties relate to the role of defendant Correction Officer Merced ("Merced").  According to Merced's account, as memorialized in a written "Notice of Infraction," he attempted to pick up Allen's property to place it in the dormitory, and Allen reacted by kicking him in the leg.  (Eichenholtz Decl., Ex. D (Notice of Infraction, dated Apr. 16, 2001).)  A Correctional Health Services record shows that Merced was seen after the incident for "pain around [the] knee area," and was found to have "medial tenderness," although all other diagnostic findings were negative.  (Eichenholtz Decl., Ex. E (Correctional Health Services Report, dated Apr. 16, 2001).)

Allen, for his part, contends that he never kicked Merced.  Rather, Allen asserts that, after Merced had already placed Allen's property in the dormitory area, and after the other officers had grabbed Allen's arms to try to pull him into the dormitory, Merced came up on him from behind, "put [him] in a headlock," and "tripped [him] to the floor."  (Allen Rule 56.1 Statement ¶ 27.)  According to Allen, once he was on the floor, he was handcuffed, and Merced lifted his arms in a "ninety degree angle."  (*Id.* ¶¶ 28-29.)  Allen states that he was then "lifted off the

3

floor," and, with his arms still forcibly raised behind his back, he was walked by the officers

down some steps, to the "intake" area.  (*Id.* ¶¶ 29-32.)

     Allen further asserts that, while he was being walked down the steps, with his arms held

up behind him and his head facing down, Merced was "banging [his] head against the wall" (*id.*

¶ 30; Eichenholtz Decl., Ex. C, at 46-47); according to Allen, this conduct was not accidental,

but rather intentional (Eichenholtz Decl., Ex. C, at 46).  Allen asserts that, when he was later

taken to the medical clinic, he had "swelling and bruises to [his] head."  (*Id.* at 48.)

Photographs of Allen's face were apparently taken at that time, although it is difficult to see any

injury in the copies of the photographs that Allen has submitted to the Court.  (Affidavit of Jamal

Allen in Support of Opposing Motion for Summary Judgment, sworn to Feb. 28, 2006

("Pl. Aff."), Ex. F (Photographs of Allen, dated Apr. 16, 2001).)  A written "Injury To Inmate

Report," however, does record that Allen's forehead was "slightly erythematous" (*i.e.,*

reddened), and that he had a small (one centimeter) superficial bruise on his forehead, which was

treated with Bacitracin ointment.  (Pl. Aff., Ex. E (Injury to Inmate Report, dated Apr. 16,

2001).)

### B.     <ins>The Charges Brought Against Allen</ins>

     In connection with this incident, Allen was charged by the New York City Correction

Department with two infractions:  refusing a direct order and assaulting a member of the staff.

(Eichenholtz Decl., Ex. D.)  Allen claims that the latter of these two charges was false.  He

further claims that he received 100 days in solitary confinement as a result of the charges – 10

days for the charge of refusing a direct order, and another 90 days for the allegedly false charge

of assaulting a correction officer.  (Allen Rule 56.1 Statement ¶ 37; Pl. Aff., Ex. H (Notice of

4

Disciplinary Hearing Disposition, dated Apr. 20, 2001).)  In addition, on the basis of Merced's

report, Allen was criminally charged in state court with felony and misdemeanor assault, as well

as harassment and obstructing governmental administration, although it appears that all of these

charges were eventually dismissed on motion of the District Attorney.  (*See* Eichenholtz Decl.,

Ex. G (*People v. Jamel Allen*, Certificate of Disposition, dated June 28, 2002); Pl. Aff., Ex. B

(Criminal Complaint sworn to by Correction Officer Jill Kiley on May 4, 2001).)[2]

According to Allen, his damages from the false accusation against him stem in part from

the fact that he was held in state custody for a substantial period of time, pending the disposition

of the criminal assault charges against him.  (*See* Eichenholtz Decl., Ex. C, at 77-82.)  The

criminal charges, he argues, would not have been brought, were it not for Merced's false

statement as to who assaulted whom.  (*See id.*)  Allen also contends that he was only transferred

back to federal custody when the state assault charges were dismissed, and that his federal

sentence only started to run as of that point.  (*See id.*)  He contends that, because any remaining

state prison term that was imposed as a result of his parole revocation was supposed to run

concurrently with his federal sentence, his parole revocation provided no independent basis for

the state to hold him in state custody.  (*See id.*)  Thus, although Defendants dispute this, Allen

claims that his overall time in prison was unlawfully lengthened – for a period of 13 months.

(*See id.* at 80-83.)[3]

---

[2] Exhibit B provides that Allen was charged under Sections 120.05, 195.05, 240.26, and 120.00 of the New York Penal Code.  (*Id.*)

[3] Although Allen has at times referred to this period as having lasted 15 months, it seems clear that, while the state assault charges may have been pending against him for that length of time (*see* Allen Rule 56.1 Statement ¶ 40), the alleged extension of Allen's period of incarceration would have only run from the date of his parole revocation hearing, which he states

C.      **Prior Proceedings in this Action**

1.      **Allen's Original Complaint**

Allen commenced this action on October 20, 2001, by filing a Complaint against the

Federal Bureau of Prisons, the City, the Division of Parole, and the Department of Correction for

alleged violations of Allen's civil rights.  (*See* Dkt. 2.)[4]

On June 11, 2002, the Court (Mukasey, J.) issued an order dismissing Allen's claims as

against the named defendants.  (*See* Dkt. 3 ("6/11/02 Order").)  The Court dismissed the claims

against the City and the Department of Correction on the ground that Allen had not alleged facts

sufficient to show that his injuries were caused by "an officially adopted policy or custom" of the

municipal defendants, as required for actions under 42 U.S.C. § 1983 against municipal entities.

(*See id*. at 3 (citing *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 690 (1978)).)  The Court also

found that Allen's claims regarding procedural irregularities in his parole revocation hearing

were subject to dismissal under *Heck v. Humphrey*, 512 U.S. 477 (1994).  (*See* 6/11/02 Order

at 4.)  Finally, Allen's claims against the Federal Bureau of Prisons were dismissed based on the

doctrine of sovereign immunity.  (*See id*. at 8-9.)  The Court, however, granted Allen leave to

---

took place on June 1, 2001 (*see id.* ¶ 39), to the date of the dismissal of the assault charges and
his transfer to federal custody, which he states was in July 2002 (*see* Eichenholtz Decl., Ex. C, at
79-83), a period of approximately 13 months.

[4] Although the Complaint was not docketed until June 11, 2002, Allen signed it on
October 20, 2001, and, where a *pro se* plaintiff is incarcerated at the time a suit is commenced,
the date on the pleading itself is generally considered the filing date.  *See Dory v. Ryan*, 999 F.2d
679, 682 (2d Cir. 1993) (*pro se* prisoner litigant's § 1983 complaint considered "filed" as of date
of delivery to prison officials for transmittal to court), *modified on other grounds*, 25 F.3d 81 (2d
Cir. 1994).

amend his Complaint to allege claims against the individual correction officers who purportedly physically abused him. (*See id*. at 9-10.)

2.   **Allen's Efforts To Amend His Complaint**

On June 21, 2002, in accordance with the Court's Order, Allen filed an Amended Complaint naming specific correction officers as defendants. (Dkt. 4.) In that Amended Complaint, however, Allen also repleaded his claims against the City, even though the Court had not granted him leave to do so. Apparently, Allen sought to cure the defect in his original claims against the City by pleading that there was, in fact, a City custom or policy in place that led to his injury.

Following his filing of an Amended Complaint, Allen sought leave to amend his pleading again, so as to add back, as defendants, the Federal Bureau of Prisons, the Division of Parole, and the New York City Department of Correction. (*See* Dkt. 11.) This Court denied Allen leave to add those three defendants, based on Judge Mukasey's June 11, 2002 Order of dismissal. (*See* Dkt. 12.)

By motion dated November 7, 2003, Allen then moved to add as defendants the State of New York and, once again, the New York City Department of Correction. (*See* Dkt. 37.) By a further submission in May 2004, however, Allen appeared to withdraw his request to add the State as a defendant. In addition, in connection with a proposed Amended Complaint dated May 5, 2004, Allen formally sought to amend his pleading to add the City as a defendant – even though Allen's first Amended Complaint had already named the City. In this last proposed pleading, Allen alleged more fully that the City had a custom of allowing correction officers at

Rikers Island to beat prisoners, such as Allen, into submission.  (*See* proposed Amended Complaint, dated May 5, 2004, at 3.)

By Order dated June 8, 2004, this Court sought to resolve Allen's outstanding motions relating to the scope of his pleading.  (*See* Dkt. 46.)  The Court accepted Allen's May 5, 2004 proposed amended pleading, deeming it Allen's "Second Amended Complaint," except that the Court denied Allen's motion to add the Department of Correction as a defendant, on the grounds that (a) the Court had already denied the same motion previously (*see id.* (citing Dkt. 12)), and that, (b) in any event, the proposed amendment would be futile, as the Department was a non-suable entity (*id.,* citing, *e.g., Echevarria v. Department of Corr. Servs. of New York City*, 48 F. Supp. 2d 388 (S.D.N.Y. 1999)).  The Court further found that Allen's outstanding motion to add the State of New York as a defendant was moot, in light of Allen's apparent withdrawal of that motion.  Finally, the Court held that Allen would be permitted to proceed against the City, and to add his proposed new allegations in support of his claim that the City had a custom and practice of permitting the use of excessive force against inmates.

Accordingly, the operative pleading in this case is Allen's Second Amended Complaint, dated May 5, 2004 (("2d Am. Compl.") (Dkt. 49)), and the only defendants currently in the case are those named in the caption of that pleading (*i.e.,* the City and the four individually-named correction officers identified above).

### 3.    Defendants' Motion for Summary Judgment

On December 5, 2005, Defendants moved for summary judgment on all of Allen's claims.[5]  As to Allen's claim that he was subjected to the use of excessive force, Defendants argue that the force applied by the defendant officers was *de minimis* and necessary in light of Allen's refusal to obey a direct order, and that Allen's claim thus cannot stand.  (Def. Mem. at 13-19.)  With respect to Allen's claim of false arrest, Defendants argue that the claim must fail because there was probable cause for Allen's arrest, given his admitted refusal to obey a direct order, and his physical resistance when the officers attempted to escort him into the dormitory.  (*Id.* at 5-8.)  Finally, Defendants argue that Allen's malicious prosecution claim, relating to the criminal charges of assault filed against him, must also fail, not only because the underlying arrest was legal, but also because Defendants did not themselves initiate the criminal proceedings, there is no evidence of malice, and Allen suffered no actual deprivation of liberty.  (*Id.* at 8-13.)  Defendants also argue that the defendant officers are entitled to qualified immunity with respect to each of Allen's claims (*id.* at 19-21), and that there is no basis for Allen's *Monell* claims against the City,[6] as Allen has failed to demonstrate the existence of a municipal policy or

_____

[5] Defendants' motion papers included a Notice of Motion, dated December 5, 2005; a Local Rule 56.1 Statement, dated December 5, 2005; and the Eichenholtz Declaration, dated December 5, 2005.  (All docketed as Dkt. 62.)  Defendants also served and filed a Statement Pursuant to Rule 56.2, dated December 5, 2005 (also Dkt. 62), setting out the requirements of Rule 56 of the Federal Rules of Civil Procedure and Local Civil Rule 56.1, as required when a represented party moves for summary judgment against a *pro se* party.  In addition, Defendants' motion papers included the Defendants' Memorandum of Law in Support of Their Motion for Summary Judgment, dated December 5, 2005 ("Def. Mem.").  (Dkt. 63.)

[6] *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978) (establishing that "local governing bodies . . . can be sued directly under § 1983 for monetary, declaratory, or injunctive relief where . . . the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's

custom, or a connection between such policy or custom and a deprivation of his constitutional rights (*id.* at 21-24).[7]

In his opposition papers,[8] Allen argues that his excessive force claim should survive Defendants' motion because the force used against him was not necessary to maintain order, as he was already handcuffed at the time Merced banged his head against a wall, and as his only offense was refusing to go into the dormitory housing area. (Pl. Opp. at 9-15.) Acknowledging that the medical records do not reflect that he suffered a serious head injury, Allen nonetheless maintains that a showing of extreme injury is not required to succeed on an excessive force claim. (*Id.* at 12-15.) As to his false arrest claim, Allen maintains that his arrest was *not* supported by probable cause, and that this claim should therefore go forward. (*Id.* at 1-3.) Finally, Allen argues that his malicious prosecution claim is supportable because (1) Defendants initiated the criminal proceedings by drafting a false misbehavior report; (2) the proceedings were terminated in his favor; (3) there was no probable cause to prosecute the assault charges because he never assaulted Merced; (4) the false misbehavior report evidences Defendants' malicious intent; and (5) his sentence was lengthened due to this criminal prosecution,

---

officers.").

[7] Defendants also argue that, to the extent Allen is seeking to raise (a) a federal due process or retaliation claim, and/or (b) any claim under state law, the Court should reject any such claims as never having been pleaded in the Second Amended Complaint, or, in any event, as lacking merit. (*See* Defendants' Memorandum of Law in Further Support of Their Motion For Summary Judgment, dated March 20, 2006 ("Def. Reply Mem."), at 4-5; Def. Mem. at 24-25.)

[8] Allen's opposition papers include his sworn affidavit (Dkt. 69); an undated Statement of Material Facts, mailed March 3, 2006 (Dkt. 70); and an undated, untitled submission that appears to constitute a memorandum of law opposing summary judgment, mailed March 3, 2006 ("Pl. Opp.") (Dkt. 71).

constituting a deprivation of his Fourth Amendment rights.  (*Id.* at 4-7.)  As to each of his

claims, Allen contends that the defendant officers are not entitled to qualified immunity.  (*Id.* at

18-22.)  He further contends that his claim against the City should stand because, according to a

CNN news article, the City has engaged in a custom established by Rikers Island guards of

beating inmates.  (*Id.* at 22-25.)  Moreover, Allen contends that the City has failed to discourage

officers from writing false misbehavior reports and from perjuring themselves.  (*Id.*)

In their reply papers,[9] Defendants reiterate certain of their earlier arguments (Def. Reply

Memo. at 1-4, 6-10), and also point out that the Rule 56.1 Statement submitted by Allen in

opposition to their motion is deficient, in that it fails to controvert Defendants' statements of fact

in corresponding numbered paragraphs, and with citations to evidence (*id.* at 1 n.1; Def. Reply

¶¶ 1-41).  Therefore, Defendants argue, all of the facts set forth in their own Rule 56.1 Statement

should be deemed admitted.  (Def. Reply Mem. at 1 n.1.)

### 4.    Allen's Motion for Additional Discovery

Discovery in this case was closed well prior to Defendants' motion.  Yet in response to

Defendants' reply papers, Allen moved on March 27, 2006 to reopen discovery for the "limited"

purpose of obtaining evidence to support his *Monell* claim against the City.  Specifically, Allen

requested discovery regarding:  (1) "the policy concerning the appropriate procedure of the

supervising, training, and disciplining, and security and monitering [*sic*] of day to day

operations," (2) "the policy concerning the appropriate procedure that needs to be taken when an

inmate refuses a direct order," and (3) "the policy concerning the use of excessive force."  (Dkt.

---

[9] In reply, Defendants submitted a Statement in Opposition and Reply to Plaintiff's
Statement Pursuant to Rule 56.1 ("Def. Reply"), and Defendant's Memorandum of Law in
Further Support of Their Motion for Summary Judgment, both dated March 20, 2006.  (Dkt. 67.)

68.)  On April 7, 2006, the Court denied Allen's motion, while noting that the Court would reconsider its decision, "[i]f, upon review of the [summary judgment] motion, the Court determines that any of the requested discovery would be appropriate."  (*See id.* (Mem. Endors.).)

## DISCUSSION

I.    **SUMMARY JUDGMENT STANDARD**

    A.    **Rule 56**

Under Rule 56(c), a motion for summary judgment may be granted when the parties' sworn submissions show that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986); *Holt v. KMI-Continental, Inc.*, 95 F.3d 123, 128 (2d Cir. 1996).  The moving party bears the burden of showing that no genuine issue of material fact exists.  *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).

In considering a summary judgment motion, the Court must "view the evidence in the light most favorable to the party against whom summary judgment is sought and must draw all reasonable inferences in his favor."  *L.B. Foster Co. v. Am. Piles, Inc.*, 138 F.3d 81, 87 (2d Cir. 1998) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574 (1986)); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).  Further, where the party opposing summary judgment is proceeding on a *pro se* basis, the Court must read that party's papers liberally and interpret them "to raise the strongest arguments that they suggest." *McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir. 1999) (internal quotation marks and citation omitted).  Even a *pro se* plaintiff, however, cannot withstand a motion for summary judgment by relying merely on the allegations of a complaint.  *See Champion v. Artuz*, 76 F.3d 483, 485

(2d Cir. 1996). Rather, when confronted with evidence of facts that would support judgment in the defendant's favor as a matter of law, the plaintiff must come forward with evidence in admissible form that is capable of refuting those facts. *See* Fed. R. Civ. P. 56(e); *see also Jermosen v. Coughlin*, 877 F. Supp. 864, 867 (S.D.N.Y. 1999) (*pro se* plaintiffs must make proper evidentiary showing in order to defeat summary judgment).

Overall, the Court "cannot try issues of fact; it can only determine whether there are issues to be tried." *Am. Mfrs. Mut. Ins. Co. v. Am. Broad.-Paramount Theatres, Inc.,* 388 F.2d 272, 279 (2d Cir. 1967); *accord Sutera v. Schering Corp.*, 73 F.3d 13, 15-16 (2d Cir. 1995). Only where there is no genuine issue of material fact, viewing the evidence in the light most favorable to the nonmoving party, is summary judgment appropriate. *See Liberty Lobby*, 477 U.S. at 248; *Binder v. Long Island Lighting Co.*, 933 F.2d 187, 191 (2d Cir. 1991).

**B.**     **Local Civil Rule 56.1**

Under this Court's rules, a party moving for summary judgment under Rule 56 must submit "a separate, short and concise statement of the material facts as to which the moving party contends there is no genuine issue to be tried." Local Civ. R. 56.1(a). If the opposing party fails to respond to the moving party's Rule 56.1 Statement, then the material facts contained in the moving party's statement are deemed admitted as a matter of law. *See Giannullo v. City of New York*, 322 F.3d 139, 140 (2d Cir. 2003); *see also* Local Civ. R. 56.1(c) ("Each numbered paragraph in the statement of material facts required to be served by the moving party will be deemed admitted for purposes of the motion unless specifically controverted by a correspondingly numbered paragraph in the statement required to be served by the opposing party."). If the moving party seeks summary judgment against a *pro se* litigant, the

13

moving party is also required to notify the *pro se* litigant of the requirements of Rule 56 and

Local Rule 56.1, in the specific form prescribed by this Court's rules.  Local Civ. R. 56.2.  *Pro*

*se* litigants are then not excused from meeting the requirements of Local Rule 56.1.  *See Vt.*

*Teddy Bear Co., Inc. v. 1-800-BEARGRAM Co.*, 373 F.3d 241, 246 (2d Cir. 2004) (upholding

Local Rules 56.1 and 56.2).

       As the Second Circuit has explained, "[t]he purpose of Local Rule 56.1 is to streamline

the consideration of summary judgment motions by freeing the district courts from the need to

hunt through voluminous records without guidance from the parties."  *Holtz v. Rockefeller &*

*Co., Inc.*, 258 F.3d 62, 74 (2d Cir. 2001).  Local Rule 56.1, however, does not relieve the party

seeking summary judgment of the burden of establishing that it is entitled to judgment as a

matter of law.  *Id.*  The Court may not rely solely on the statement of undisputed facts contained

in the moving party's Rule 56.1 Statement; it also must be satisfied that the moving party's

assertions are supported by the record.  *See Vt. Teddy Bear Co., Inc.*, 373 F.3d at 244; *see also*

*Holtz*, 258 F.3d at 74; *Zerafa v. Montefiore Hosp. Hous. Co.*, 403 F. Supp. 2d 320, 329 n.12

(S.D.N.Y. 2005).  Summary judgment may only be granted where the Court is satisfied that the

undisputed facts, as supported by the record, "'show that the moving party is entitled to a

judgment as a matter of law.'"  *Champion v. Artuz*, 76 F.3d 483, 486 (2d Cir. 1996) (quoting

Fed. R. Civ. P. 56(c)).

## II.    <u>ADEQUACY OF ALLEN'S RULE 56.1 STATEMENT</u>

       As a preliminary matter, the Court faces the question of whether, for purposes of this

motion, it should deem all facts set forth in Defendants' Rule 56.1 Statement to be admitted

because, despite having received notice of the requirements of the local rule, Allen failed to

adhere to all of those requirements in his opposing Statement. (*See* Def. Reply at ¶¶ 1-41.) On this question, Defendants note that, although Allen's Rule 56.1 Statement contains numbered paragraphs with discrete factual assertions, those paragraphs do not correspond to Defendants' own paragraphs, as required by Local Civil Rule 56.1(b). Moreover, Defendants note that, although Allen's Statement does contain some citations to the record, it does not do so throughout. *See* Local Civ. R. 56.1(d). As Allen has not fully complied with these aspects of the rule, Defendants argue that he has not effectively raised any disputed issues of fact. (*See* Def. Reply Mem. at 1 n.1.)

Despite Allen's failings in this regard, however, he has plainly made substantial efforts to respond to Defendants' motion, with a sworn affidavit, documentary evidence, and a Rule 56.1 Statement, which, while imperfect, does effectively highlight for the Court those facts that Allen believes to be in dispute. Further, the areas of dispute in this case are readily apparent, not only from Allen's Rule 56.1 Statement, affidavit, and memorandum of law, but also from the portions of the discovery record submitted by Defendant, including excerpts of Allen's sworn deposition testimony. At his deposition, Allen gave testimony that plainly controverts certain of Defendants' statements of supposedly "undisputed" fact. (*Compare, e.g.,* Def. Rule 56.1 Statement ¶ 12 (stating that "Plaintiff assaulted defendant Merced") *with* Eichenholtz Decl., Ex. C, at 45 (in which Allen testified that he "didn't kick nobody"; *id*. at 59-60 (in which Allen testified that he did not agree with Merced's statement that he was assaulted by Allen).) Under the circumstances, it is difficult to see how Defendants have been prejudiced by Allen's failure to submit a fully-compliant Rule 56.1 Statement.

Given that Allen is proceeding *pro se,* that summary judgment may only be granted where the Court is satisfied that there is no genuine issue of material fact, and that, in this instance, it is not difficult for the Court – or for Defendants – to review the evidentiary record to determine where any disputed issues may lie, the Court declines to accept blindly as "admitted" all factual averments made by Defendants.  *See Holtz*, 258 F.3d at 73 (court "has broad discretion to determine whether to overlook a party's failure to comply with local court rules") (citations omitted); *see also, e.g., Melendez v. Devry Corp.*, No. 03 Civ. 1029, 2005 U.S. Dist. LEXIS 31384, at *3-5 (E.D.N.Y. Nov. 29, 2005) (declining to deem admitted all facts set forth in defendant's statement, where plaintiff was proceeding *pro se*); *Berdugo v. City of New York*, No. 03 Civ. 7319, 2004 U.S. Dist. LEXIS 16870, at *2 n.1 (S.D.N.Y. Aug. 23, 2004) (where plaintiff failed to follow requirements of Local Rule 56.1, deeming defendants' statements of facts admitted, but only to the extent that they were supported by the record); *Gayman v. Pathmark Stores, Inc.*, No. 04 Civ. 7882, 2005 U.S. Dist. LEXIS 12868, at *6 n.3  (S.D.N.Y. June 30, 2005) (refusing to grant procedural default, where plaintiff's Rule 56.1 statement was numbered in such a way to make it clear which paragraphs of defendant's 56.1 statement plaintiff was disputing); *Ostroski v. Southold*, No. 99 Civ. 2648, 2006 U.S. Dist. LEXIS 50229, at *11 (E.D.N.Y. July 21, 2006) (concluding that plaintiff not prejudiced, despite defendant's initial failure to submit a Local Rule 56.1 Statement, where the "relevant facts [in dispute] were readily apparent from the facts section of the memorandum of law").

Rather, the Court will "consider the totality of the parties' submissions in identifying disputed material facts, and will construe those disputed facts in plaintiff's favor as is appropriate on summary judgment."  *Hamilton v. Bally of Switz.*, No. 03 Civ. 5685, 2005 U.S.

16

Dist. LEXIS 9319, at *3-4 (S.D.N.Y. May 12, 2005); *see also Melendez*, 2005 U.S. Dist. LEXIS 31384, at *5 (examining "the entire record before the court, glean[ing] the material facts therefrom, and decid[ing] the motion based on those facts" despite plaintiff's failure to comply with Local Rule 56.1(c)).

## III.   **ALLEN'S CLAIMS**

Section 1983 of Title 42 of the United States Code "establishes liability for deprivation under the color of state law 'of any rights, privileges, or immunities secured by the Constitution.'"  *Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996) (quoting 42 U.S.C. § 1983).  Section 1983 does not create new rights; it merely provides a mechanism "for redress for the deprivation of rights established elsewhere." *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993).  Accordingly, to succeed on a claim for violation of civil rights under 42 U.S.C. § 1983, a plaintiff must show that "state officials, acting under color of state law, deprived [him] of a right guaranteed to [him] by the Constitution."  *Rodriguez v. Phillips*, 66 F.3d 470, 473 (2d Cir. 1995).  Here, Allen's claims are predicated on allegations that he was subjected to an excessive use of force, and that he was then falsely arrested and maliciously prosecuted, all in violation of his constitutional rights.  The Court will examine these claims in turn.

### A.   **Excessive Force**

#### 1.    **Applicable Legal Standards**

Allen has alleged that the individual defendants engaged in the use of excessive force against him, in violation of the Eighth Amendment's prohibition against the infliction of cruel

and unusual punishment.[10]  The Eighth Amendment, which is made applicable to the states

through the Fourteenth Amendment, *see McKenna v. Wright*, No. 01 Civ. 6571 (WK), 2002 WL

338375, at *5 n.8 (S.D.N.Y. Mar. 4, 2002) (citation omitted), is violated by unnecessary and

wanton inflictions of pain and suffering, *see Whitley*, 475 U.S. at 320.

    To establish an Eighth Amendment excessive force claim, an inmate must satisfy both

subjective and objective tests.  *See Hudson v. McMillan*, 503 U.S. 1, 7-8 (1992); *Sims v. Artuz*,

230 F.3d 14, 20 (2d Cir. 2000); *McCrory v. Beldon*, No. 01 Civ. 0525 (MHD), 2003 WL

22271192, at *5 (S.D.N.Y. Sept. 30, 2003).  To satisfy the subjective test, the inmate must show

that the prison officials "had a 'wanton' state of mind when they were engaging in the alleged

misconduct."  *Davidson v. Flynn*, 32 F.3d 27, 30 (2d Cir. 1994) (citing *Hudson*, 503 U.S. at 7).

Whether such a showing has been made is determined by balancing four factors:  (1) the need for

the application of force; (2) the relationship between that need and the amount of force used;

(3) the threat reasonably perceived by the responsible officials; and (4) any efforts made to

temper the severity of a forceful response.  *Hudson*, 503 U.S. at 7 (citing *Whitley*, 475 U.S. at

321).  The absence of a serious injury is a relevant, but not dispositive, factor in this analysis.

*See id.*  Ultimately, the court's decision "turns on 'whether force was applied in a good faith

---

    [10] Although the Fourth Amendment generally applies to excessive force claims arising
from an "arrest," where, as here, Allen is a convicted prisoner serving his sentence, the claim
should be analyzed under the Eighth Amendment.  *See Turner v. White*, No. 95 Civ. 4822, 2005
WL 4651878, *5 (E.D.N.Y. Feb. 7, 2005) (noting that the Eighth Amendment provides "'the
primary source of substantive protection . . .' in cases where the defendant has been convicted, is
incarcerated, and there is a deliberate use of excessive and unjustified force") (quoting *Graham
v. Connor*, 490 U.S. 386, 395 n.10 (1989)); *see also Whitley v. Albers*, 475 U.S. 312, 319 (1986)
("After incarceration, only the unnecessary and wanton infliction of pain . . . constitutes cruel
and unusual punishment forbidden by the Eighth Amendment.") (internal quotation marks and
citations omitted).

effort to maintain discipline or maliciously and sadistically for the very purpose of causing harm.'" *Whitley,* 475 U.S. at 320-21 (quoting *Johnson v. Glick*. 481 F.2d 1028, 1033 (2d Cir. 1973)).

To satisfy the objective test, the inmate must show that the force that was applied was "sufficiently serious." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (quoting *Wilson v. Seiter*, 501 U.S. 295, 298 (1991)). The objective component may include allegations of the type and extent of force used, the nature and seriousness of any injury that resulted, and other indicia of the "excessiveness" of the force. *Mitchell v. Keane*, 974 F. Supp. 332, 340-41 (S.D.N.Y. 1997) (citing *Branham v. Meachum*, 77 F.3d 626, 628-29 (2d Cir. 1996)), *aff'd*, 175 F.3d 1008 (Table) (2d Cir. 1997). This inquiry is "context specific, turning upon contemporary standards of decency." *Griffin v. Crippen*, 193 F.3d 89, 91 (2d Cir. 1999) (quoting *Blyden v. Mancusi*, 186 F.3d 252, 263 (2d Cir. 1999) (internal quotation marks omitted)). Furthermore, although "a *de minimis* use of force will rarely suffice to state a constitutional claim," *Romano v. Howarth*, 998 F.2d 101, 105 (2d Cir. 1993) (citation omitted), a plaintiff "need not prove 'significant injury' to make out an excessive force claim, and, thus, the fact that he suffered only minor injuries does not warrant dismissal." *Griffin*, 193 F.3d at 92.

### 2. Excessive Force Claim Against Defendants Sakellardis, Crespo, and Reyes.

Allen contends that Captain Sakellardis and Officers Crespo and Reyes used excessive force against him, violating his rights under the Eighth Amendment. (2d Am. Compl. ¶ 8.) In particular, Allen claims that defendants Sakellardis and Crespo improperly placed their hands on him when they tried to move him into the dormitory area (Eichenholtz Decl., Ex. C, at 74-75), and that Reyes should also be held liable because he was present at the time (*id.* at 75).

19

Given that Allen's excessive force claim against Sakellardis, Crespo and Reyes appears to be based solely on their conduct in trying to move him into the dormitory, the claim against these defendants does not present any genuine disputed issue of fact. The parties are in essential agreement as to what transpired at that time. There is no dispute that Allen refused to comply with a direct order from several correction officers. The correction officers had ordered Allen into a dormitory area, and Allen concedes that he physically resisted their attempts to move him there. (Allen 56.1 Statement ¶¶ 10, 25-26.) Neither party disputes that some measure of force was then used against Allen, in order to place him in the dormitory area. (Def. Rule 56.1 Statement ¶¶ 9, 11.) Allen admits, however, that Sakellardis and Crespo merely tried to pull him into the area, and that neither of these officers punched or kicked him. (Eichenholtz Decl., Ex. C, at 41, 44-45.) Further, according to Allen's own description of the facts, Reyes never applied *any* force against him at all. (*See id.* at 40-49, 74-75; *see also generally* Allen Rule 56.1 Statement.) Allen also acknowledges that the only injuries he suffered that day were "swelling and bruises to the head" (*id.* Eichenholtz Decl., Ex. C at 48-49), which he apparently contends were caused by the actions of another defendant, Merced, when Allen was finally led away from the dormitory area (*see id.* at 46-49).[11]

---

[11] Throughout his submissions, as well as in his deposition testimony, Allen explains that his excessive force claim against defendants Sakelardis, Crespo, and Reyes is based on their attempts to move him into the dormitory. At no point does Allen plead or argue that these defendants should be held liable for their failure to intervene to prevent or stop the later alleged assault by Merced, which Allen claims occurred while he was in handcuffs and was being led away from the area. The closest Allen comes to making any type of argument regarding any officer's failure to intervene, at any time, is his bare assertion that unnamed corrections officers were aware that he was attacked on April 16, 2001, because the attack "took place in front of a surveillance camera." (Pl. Opp. at 16.) Even construing Allen's claims and arguments liberally, this is insufficient to support an excessive force claim against Sakelardis, Crespo or Reyes.

On this undisputed factual record, Allen's allegations as to the use of force by Sakellardis, Crespo, and Reyes cannot be found to rise to the level of a constitutional violation. At most, it is evident that the force used by these defendants was *de minimis*. Accordingly, the Court should grant summary judgment to these defendants, dismissing Allen's excessive force claim against them.

### 3. Excessive Force Claim Against Defendant Merced

Unlike the parties' accounts as to what transpired in the dormitory area, their accounts diverge with regard to the role played by Merced. According to Allen, Merced initially came from behind and placed him in a headlock, tripping him to the floor. (*See* Allen 56.1 Statement ¶ 27.) Allen then contends that, after he was handcuffed and subdued, and was being led down the steps to the intake area, he became the victim of a gratuitous attack by Merced. (*See id.* ¶¶ 28-31; Eichenholtz Decl., Ex. C, at 46.) The critical part of Allen's testimony is that, as he was being led down the steps, with his arms at a ninety degree angle, Merced deliberately banged his head repeatedly against a wall. (*See* Allen 56.1 Statement ¶ 30; Eichenholtz Decl., Ex. C, at 46.) Allen has testified that, as a result of Merced's attack, he suffered swelling and bruises to his head. (*See* Eichenholtz Decl., Ex. C, at 48-49.)

Defendants, for their part, do not squarely address what occurred on the steps. They do state that any force used against Allen was, in general, *de minimis* and necessary to restore order following his refusal to obey the correction officers' commands. (Def. Rule 56.1 Statement ¶¶ 11, 16; Def. Mem. at 13-19.) Defendants also state that they only applied force in order to move Allen into the dormitory (*id.* ¶ 16), implicitly denying that any force was used thereafter.

Thus, as a preliminary matter, the parties appear to dispute whether Merced actually used any force at all against Allen, after Allen was handcuffed.  If force *was* used after that point, then the parties assuredly dispute whether Merced had a "wanton" state of mind, and whether the degree of force involved under the circumstances was serious.  On the issue of Merced's subjective intent, Allen contends (and Merced apparently denies) that Merced assaulted him for no legitimate reason, given that, once Allen was under the officers' control, he posed no threat and no further force was needed – certainly not the repeated banging of Allen's head against the wall.  If Allen's account of events is believed, then a jury could reasonably infer that Merced acted maliciously, regardless of whether Allen had initially failed to comply with a direct order. *See Griffin*, 193 F.3d at 91 (dismissal of an excessive force claim was inappropriate where there were genuine issues of material fact concerning what transpired after plaintiff was handcuffed and guards used force against him); *Corselli v. Coughlin*, 842 F.2d 23, 27 (2d Cir. 1988) (reversing summary judgment, despite possibility that plaintiff had not followed correction officer's order, where force applied by officer was allegedly gratuitous).  Hence, the facts are sufficiently contested to raise a triable issue as to the subjective component of Allen's excessive force claim.

As to the objective component of this claim, there is again a substantial factual dispute. Contrary to Defendants' assertion, the alleged application of force by Merced, if proven, would have been more than *de minimis*.  As Defendants acknowledge, in an excessive force action, the "more than [] *de minimis*" requirement presents a low threshold for plaintiffs to overcome. *Espinal v. Goord*, No. 00 Civ. 2242, 2001 U.S. Dist. LEXIS 5688, at *54 n.46 (S.D.N.Y. May 8, 2001).  Forcibly banging a person's head against a wall entails a risk of severe injury.  Numerous

courts in this circuit have found, in analogous factual circumstances, that comparable displays of force were more than *de minimis*. *See Atkins v. County of Orange*, 372 F. Supp. 2d 377, 399-401 (S.D.N.Y. 2005) (concluding that triable issue of fact existed as to objective element of plaintiff's excessive force claim where plaintiff's body and head was allegedly slammed into a wall, after he had been handcuffed, causing pain in his shoulders for several days)*; Bonilla v. Brancato*, No. 99 Civ. 10657, 2002 U.S. Dist. LEXIS 17360, at *19-20 (S.D.N.Y. Sept. 18, 2002) (denying summary judgment on excessive force claim where plaintiff alleged that correction officer intentionally struck his head with baton while plaintiff laid on ground defenseless); *Turner v. White*, No. 95 Civ. 4822, 1998 WL 355183, at *2-3 (E.D.N.Y. Apr. 30, 1998) (denying summary judgment on plaintiff-parolee's Eighth Amendment excessive force claims, where defendants, on three occasions, allegedly handcuffed plaintiff without cause, and on one of those occasions slammed plaintiff's head against the wall several times while he was handcuffed); *see also Kalwasinski v. Artuz*, No. 02 Civ. 2582, 2003 U.S. Dist. LEXIS 22731, at *24-25 (S.D.N.Y. Dec. 18, 2003) (noting that "when use of force furthers no penological interest, even a *de minimis* use of force is wanton and so violates Eighth Amendment protections"); *Messina v. Mazzeo*, 854 F. Supp. 116, 133 (E.D.N.Y. 1994) (noting that "a review of the case law in this circuit reveals that, as a general rule, the issue of whether excessive force was used is for the jury to decide, even though the amount of force used and the extent of injury asserted may be minimal").  The level of force alleged by Allen, if established, would be enough to overcome the low threshold established in previous decisions.

Moreover, Defendants are incorrect in asserting that the extent of Allen's injuries demonstrate such a modest use of force that Defendants are entitled to judgment as a matter of

law.  (Def. Mem. at 18-19.)  To support their position, Defendants point to the "Injury to Inmate Report," which states that Allen suffered only a "one centimeter superficial bruise to the left forehead," requiring the application of an antibiotic ointment.  (Pl. Aff., Ex. E.)  Courts in this circuit have held, however, that "[e]ven if the injuries suffered were not permanent or severe, a plaintiff may still recover if the force used was unreasonable and excessive."  *Corselli*, 842 F.2d at 26 (internal quotation marks and citations omitted); *see also id.* (noting that "the extent of injury is but one of the factors to be considered").  Any exertion of malicious force "constitutes an Eighth Amendment violation per se, whether or not significant injury is evident."  *Griffin*, 193 F.3d at 91 (internal quotation marks and citations omitted) (reversing grant of summary judgment where only injuries alleged by plaintiff were bruised shin and swelled knee).

Accordingly, while Allen's injuries do not appear to have been particularly grave, a question of material fact exists regarding the objective component of his claim, as the circumstances under which Allen was injured are disputed by the parties.  *See Smith v. Donahue*, No. 03 Civ. 325F, 2005 WL 1460173, at *4 (W.D.N.Y. June 21, 2005) ("While plaintiff's injuries, lumbar back pain and an abrasion on his hand, do not appear to have been serious, the court finds a question of material fact exists regarding the circumstances under which Plaintiff sustained these injuries."); *McCrory*, 2003 WL 22271192, at *6 ("Depending on the specific facts of how the altercation began and proceeded, a reasonable fact-finder could conceivably conclude that some of the actions that plaintiff attributes to each of these defendants represented malicious or sadistic conduct, or at least reflected an excessive and unreasonable use of force to keep or restore order."); *Ali v. Szabo*, 81 F. Supp. 2d 447, 458 (S.D.N.Y. 2000) ("[B]ecause there is a material issue of fact as to whether any force was needed, the Court cannot determine

24

whether the force allegedly used . . . reasonably correlates to the need for the application of force."); *Johnson v. Doherty*, 713 F. Supp. 69 (S.D.N.Y. 1989) (summary judgment on an excessive force claim is inappropriate where there are disputed facts as to the context in which the incident occurred and the signs of provocation); *see also Breen v. Garrison*, 169 F.3d 152, 153 (2d Cir. 1999) (where the parties version of facts differed markedly, "[t]he issue of excessive force was . . . for the jury, whose unique task it was to determine the amount of excessive force used, the seriousness of the injuries, and the objective reasonableness of the officer's conduct"); *Henry v. City of New York*, No. 02 Civ. 4824, 2003 WL 22077469, at *2 (S.D.N.Y. Sept. 8, 2003) ("[W]here there is a factual dispute about the circumstances surrounding arrest and the degree of force used, the Second Circuit requires a jury determination of the reasonableness of that force.").

In light of the parties' substantially different accounts of Merced's conduct, material issues of fact exist as to the degree of force applied by Merced, and whether such force was justifiable under the circumstances. Accordingly, to the extent Defendants have sought summary judgment on Allen's excessive force claim against Merced based on the supposed absence of any material factual dispute, I recommend that the motion be denied.

### 4.    Qualified Immunity

Merced argues that he is entitled to qualified immunity with respect to Allen's excessive force claim.[12]  (Def. Mem. at 19-21.)  "The purpose of the qualified immunity doctrine is to

---

[12] In fact, all individual defendants argue that they are entitled to qualified immunity. (*See* Def. Mem. at 19-21.)  The Court, however, need not engage in this analysis for defendants Sakellardis, Crespo, and Reyes because it has already concluded that Allen's excessive force claims as to these defendants should be dismissed.  *See Rose v. Alves*, No. 01 Civ. 648SR, 2004 WL 2026481, at *7 n.6 (not reaching question of qualified immunity because both plaintiffs

balance the need to protect the rights of citizens through damage remedies, with the opposing

need to 'protect officials who are required to exercise their discretion and the related public

interest in encouraging the vigorous exercise of official authority.'" *Danahy v. Buscaglia*, 134

F.3d 1185, 1189 (2d Cir. 1998) (quoting *Butz v. Economou*, 438 U.S. 478, 506 (1978)). "A

government official is entitled to qualified immunity from suit for actions taken as a government

official if (1) the conduct attributed to the official is not prohibited by federal law, constitutional

or otherwise; (2) the plaintiff's right not to be subjected to such conduct by the official was not

clearly established at the time of the conduct; or (3) the official's action was objectively legally

reasonable in light of the legal rules that were clearly established at the time it was taken."

*Cuoco v. Moritsugu*, 222 F.3d 99, 109 (2d Cir. 2000) (citations omitted).

A prisoner's right to freedom from excessive force by prison officials is a clearly

established constitutional right. *See, e.g, McCrory*, 2003 WL 22271192, at *7 ("there is no

question that . . . the right of inmates to be free from excessive force by their jailers [i]s well-

established") (citation omitted). Where a right is clearly established, however, a government

official is still entitled to qualified immunity if "it was objectively reasonable for him to believe

that his actions were lawful at the time of the challenged act." *Cerrone v. Brown*, 246 F.3d 194,

199 (2d Cir. 2001) (internal quotation marks and citation omitted). Objective reasonableness is

established if "the only conclusion a reasonable jury could reach is that reasonable officers

would disagree on the constitutionality" of the official's actions. *Id.* at 203.

---

were entitled to summary judgment on the merits of plaintiff's claim); *see also Peterson v. Tomaselli*, No. 02 Civ. 6325 (DC), 2003 WL 22213125, at *8 (S.D.N.Y. Sept. 29, 2003) (where motion to dismiss is granted based on failure to state a claim, the qualified immunity argument need not be reached).

Dismissal on the basis of a qualified immunity defense is not appropriate where "there are facts in dispute that are material to a determination of reasonableness." *Thomas v. Roach*, 165 F.3d 137, 143 (2d Cir. 1999); *see, e.g., Breen*, 169 F.3d at 153 (issues of material fact which existed as to the excessive force claim precluded summary judgment based on a qualified immunity defense); *McCrory*, 2003 WL 22271192, at *7 ("immunity cannot be granted on this record" where, *inter alia*, there was issue of fact regarding initiator of altercation between plaintiff and defendants); *Ali*, 81 F. Supp. 2d at 461 ("The Court cannot conclude as a matter of law that [officers'] conduct was objectively reasonable since there are material issues of fact as to whether [plaintiff] was obeying the officers' order and who started the physical confrontation."); *Amaker v. Haponik*, No. 98 Civ. 2663 (JGK), 2000 WL 343772, at *6 (S.D.N.Y. Mar. 31, 2000) (complaint should not be dismissed on qualified immunity grounds where "the facts [were] not sufficiently developed at this stage in the proceedings to conclude that a reasonable officer would not have concluded that defendants' actions were unlawful").

   For the same reasons that Merced is not entitled to summary judgment on the merits of an excessive force claim (*i.e.*, because there is a disputed issue of fact as to the degree of force applied by Merced, and whether such force was justifiable under the circumstances), he is not entitled to the summary disposition of such a claim on the basis of qualified immunity. *See Hemphill v. Schott*, 141 F.3d 412, 418 (2d Cir. 1998) ("[S]ummary judgment based either on the merits or on qualified immunity requires that no disputes about material facts remain.") (citations omitted); *Jeanty v. County of Orange*, 379 F. Supp. 2d 533, 542 (S.D.N.Y. 2005) ("In the case at bar, the same genuine issues of material fact that preclude summary judgment on plaintiff's excessive force claim, also preclude application of the defense of qualified immunity at the

27

summary judgment stage."); *Dellmaore v. Stenros*, 886 F. Supp. 349, 352 (S.D.N.Y. 1995)

(finding that material factual disputes exist on the issue of qualified immunity for the same

reasons that court denied the motion for summary judgment on the plaintiff's Eighth Amendment

excessive force claim).  Accordingly, I recommend that Defendants' summary judgment motion

to dismiss the excessive force claim against Merced on the ground of qualified immunity be

denied.

### B.    False Arrest

Allen also claims that he was falsely arrested in violation of his constitutional rights.

(*See* Pl. Opp. at 1-3.)  In order to maintain a claim for false arrest, Allen must demonstrate that

his arrest was made without probable cause.  *See Rossi v. New York City Police Dept.*, No. 94

Civ. 5113 (JFK), 1998 WL 65999, at *4 (S.D.N.Y. Feb. 17, 1998) (citing *Baker v. McCollan*,

443 U.S. 137 (1979)).  "Under New York law, the existence of probable cause is an absolute

defense to a false arrest claim."  *Jaegly v. Couch*, 439 F.3d 149, 152 (2d Cir. 2006) (citation

omitted).  "An officer has probable cause to arrest when he or she has knowledge or reasonably

trustworthy information of facts and circumstances that are sufficient to warrant a person of

reasonable caution in the belief that the person to be arrested has committed or is committing a

crime."  *Id.* (internal quotation marks and citations omitted).

No genuine issues of material fact are in dispute as to whether probable cause existed to

arrest Allen.  Allen was charged with assault, harassment, and obstruction of governmental

administration.  (*See* Eichenholtz Decl., Ex. G; Pl. Aff., Ex. B.)  A person is guilty of obstructing

governmental administration when he deliberately "prevents or attempts to prevent a public

servant from performing an official function, by means of intimidation, physical force or

interference, or by means of any independently unlawful act." N.Y. Penal Law § 195.05. Defendants plainly had probable cause to arrest Allen under this statute, in light of his admission that he repeatedly refused the correction officers' direct order to move into the dormitory area. Allen's refusal to move, as directed, gave the officers a more than reasonable basis to believe that Allen was trying to prevent them from carrying out their official functions, which included the functions of maintaining institutional order and escorting prisoners to their destinations.

As probable cause existed to arrest Allen for obstructing governmental administration, the Court need not address the question of whether probable cause existed to arrest Allen for harassment or assault. "[A] claim for false arrest turns only on whether probable cause existed to arrest a defendant, [regardless of] whether probable cause existed with respect to each individual charge, or indeed, any charge actually invoked by the arresting officer at the time of arrest." *Jaegly*, 439 F.3d at 154. Accordingly, Allen cannot sustain his claim of false arrest, even if he can establish that there was no probable cause to believe that he assaulted Merced. *See Ostroski*, 2006 U.S. Dist. LEXIS 50229, at *17 (S.D.N.Y. July 21, 2006) (holding that "it is of no import that [plaintiff] was not convicted of all the crimes for which she was arrested," in making her claim for false arrest because the "existence of probable cause as a matter of law as to some of the crimes that she was charged on the day of her arrest legitimized the seizure of her person and her subsequent detention") (citing Jaegly, 439 F.3d at 154). Further, there is no merit to Allen's argument that probable cause did not exist for his arrest because the criminal charges brought against him by the District Attorney were eventually dismissed. (Pl. Opp. at 1-3.) An ultimately favorable disposition does not mean that probable cause never existed for the original arrest. *See Ahern v. City of Syracuse*, 411 F. Supp. 2d 132, 147 (N.D.N.Y. 2006) (noting that

"eventual disposition of the criminal charges is irrelevant to the probable cause determination") (internal quotation marks and citation omitted).

As Defendants indisputably had probable cause to arrest Allen, I recommend that summary judgment be granted, dismissing Allen's false arrest claim as against all Defendants.

### C.    **Malicious Prosecution**

Allen also asserts a malicious prosecution claim (Pl. Opp. at 4-7), arguing that Defendants' allegedly false and malicious reports provided the sole basis for his state court prosecution (*id.*). As proof that this prosecution was unconstitutional, he notes that the charges were eventually dismissed. Allen also contends that, as a result of the criminal prosecution, he suffered an unlawful period of incarceration in a state facility, without receiving credit toward his separate federal sentence. (*Id.*)

### 1.    **Applicable Legal Standard**

Claims for malicious prosecution, brought under Section 1983 to vindicate the Fourth Amendment right to be free from unreasonable seizure, are "substantially the same" as claims for malicious prosecution brought under state law. *Jocks v. Tavernier*, 316 F.3d 128, 134 (2d Cir. 2003). For a plaintiff to prevail on a claim of malicious prosecution under New York law, he or she must show that: (1) the defendant commenced or continued a criminal proceeding against plaintiff; (2) the proceeding was terminated in favor of the plaintiff; (3) there was no probable cause for the proceeding; and (4) the proceeding was instituted with malice. *Kinzer v. Jackson*, 316 F.3d 139, 143 (2d Cir. 2003) (citations omitted). For a malicious prosecution claim to rise to a constitutional level under Section 1983, a plaintiff must also demonstrate that he has suffered a post-arraignment seizure in violation of his Fourth Amendment rights. *See Rohman v.*

*New York City Transit Authority*, 215 F.3d 208, 215 (2d Cir. 2000) (citing *Murphy v. Lynn*, 118

F.3d 938, 944 (2d Cir. 1997) (noting that "in order to prevail on [a malicious prosecution] claim

under section 1983, the plaintiff must show a violation of his rights under the Fourth

Amendment")).

Defendants argue that no triable issues of fact exists as to the first, third, and fourth

elements of Allen's malicious prosecution claim.  Specifically, they contend that there are no

genuine issues of material fact in dispute as to whether Defendants initiated Allen's criminal

prosecution; whether probable cause existed to prosecute Allen; and whether Defendants were

motivated by malice in pursuing the prosecution.[13]  (Def. Mem. at 8-12.)  In addition, Defendants

contend that, as a matter of law, an already-incarcerated prisoner cannot suffer a Fourth

Amendment deprivation of liberty.  (*Id.* at 12-13.)

> ### 2.    Malicious Prosecution Claim Against
> ### Defendant Sakellardis, Crespo, and Reyes

Allen's malicious prosecution claim against defendants Sakellardis, Crespo, and Reyes

must fail because Allen has not submitted any evidence capable of satisfying the first element of

the claim, *i.e.,* that these defendants were involved in the commencement or continuation of

Allen's prosecution.

Defendants contend that the role of the prosecutor in advancing the charges against

Allen – by determining which charges would be brought, writing the complaint, and deciding to

pursue the case beyond the date of plaintiff's initial arraignment – insulated them from liability

for malicious prosecution.  (*Id.* at 10.)  This is an overly simplistic analysis, as a complaining

---

[13] At least for purposes of summary judgment, Defendants do not dispute that the
criminal charges against Allen were terminated in his favor.  (*See* Def.'s Mem. at 9 n.6.)

witness, who provides information on which a prosecution is grounded, may be held liable for malicious prosecution, even if the case is then prosecuted by the District Attorney. *See, e.g.,* *Chimurenga v. City of New York*, 45 F. Supp. 2d 337, 343 (S.D.N.Y. 1999) (holding that a malicious prosecution claim may be maintained against a party who provided "false information" that "influenc[ed the] decision whether to prosecute") (citations omitted); *see also* *White v. Frank*, 855 F.2d 956, 962 (2d Cir. 1988) (noting that a "public prosecutor's role in a criminal prosecution will not necessarily shield a complaining witness from subsequent civil liability [for malicious prosecution] where the witness's testimony is knowingly and maliciously false") (citations omitted).

Nonetheless, Allan has not advanced sufficient evidence to warrant permitting his malicious prosecution claim against Sakellardis, Crespo and Reyes to proceed to trial. In his memorandum opposing summary judgment, Allen merely contends that, because Crespo and Sakellardis "participated in the false misbehavior report[s]" that were prepared following the April 16, 2001 incident, "they should individually be liable for the actions in this incident." (Pl. Opp. at 8-9.) In particular, Allen submits a report signed by Crespo (Pl. Aff., Ex. K (Use of Force Report signed by Crespo on Apr. 16, 2001)) and another report signed by Sakellardis (*id.* (Use of Force Report signed by Sakellardis on Apr. 16, 2001)), both of which state that Allen assaulted Merced on the date in question. The reports also describe the justification for the officers' use of force against Allen. The reports do not, however, create a triable issue of fact as to whether Crespo, Sakellardis or Reyes in any way encouraged the filing of criminal charges against Allen.

Allen provides no evidence suggesting that the reports on which he relies were forwarded to the prosecutor, thus influencing the decision to proceed with criminal charges against Allen. The criminal complaint itself provides no reference to officers Sakellardis or Crespo as having provided information supporting the charges (Pl. Aff., Ex. B), nor are these officers' names listed as "reporting officials" on the "Notice of Infraction," that informed Allen of the charges (Eichenholtz Decl., Ex. D). There is also no evidence that Reyes, in any capacity, influenced the District Attorney's decision to proceed with criminal charges against Allen.

Based on the entirety of the record before the Court, I recommend that Defendants' motion for summary judgment dismissing Allen's malicious prosecution be granted, to the extent the claim is asserted against defendants Sakellardis, Crespo, and Reyes.

### 3.    Malicious Prosecution Claim Against Defendant Merced

#### a.    Commencing or Continuing a Criminal Prosecution

Despite the Defendants' assertion to the contrary, genuine issues of material fact do exist as to whether Merced initiated a prosecution against Allen. While it may have been the District Attorney who ultimately decided to bring criminal charges against Allen, Merced allegedly did provide information that "influenc[ed the] decision whether to prosecute," *Chimurenga,* 45 F. Supp. 2d at 343, and the record supports this.

It is undisputed that, within the Correction Department, Merced brought charges against Allen for violating prison rules (*see* Eichenholtz Decl., Ex. D (identifying Merced as the charging officer), and that Merced's allegations were later used as a basis for prosecuting Allen. In fact, the state criminal complaint filed against Allen in the Bronx Criminal Court identifies Merced as having provided the information forming the basis of that complaint. (*See* Pl. Aff.,

Ex. B.)  The complaint, sworn to by Correction Officer Jill Kiley, charges Allen with several crimes – assault, obstructing governmental administration, and harassment – and describes the basis for those charges.  (*Id.*)  The *only* ground cited by Kiley for making the allegations against Allen is information provided by Merced.  (*Id.*)

Taking the evidence in the light most favorable to Allen, a jury could conclude that the decision to prosecute was based solely on Merced's complaint, which, according to Allen's testimony, was false.  Accordingly, unlike the other defendant officers, Merced should not be insulated from liability.  *See Llerando-Phipps v. City of New York*, 390 F. Supp. 2d 372, 382-83 (S.D.N.Y. 2005) (listing the different ways in which plaintiffs had shown that officers initiated criminal proceedings for purposes of a malicious prosecution claim, including where "officers brought formal charges and had the person arraigned, or filled out complaining and corroborating affidavits, or swore to and signed a felony complaint") (citations omitted); *see also Spiegler v. City of New York*, No. 04 Civ. 1066, 2006 U.S. Dist. LEXIS 64377, at *13 n.7 (S.D.N.Y. Sept. 8, 2006) (noting that "a police officer's signing of a formal complaint provides a colorable basis for asserting that he encouraged the filing of charges") (citations omitted); *Carter v. Port Auth. of N.Y. & N.J.*, No. 03 Civ. 8751, 2004 U.S. Dist. LEXIS 25633, at *23-24 (S.D.N.Y. Dec. 20, 2004) (on motion for summary judgment on malicious prosecution claim, finding one officer not responsible for initiation of criminal proceeding, where that officer had merely filled out a witness statement in connection with plaintiff's arrest, but also finding that two other officers had initiated criminal process by swearing out complaining and corroborating affidavits that led to prosecution).

b.    **Probable Cause**

Defendants also contend that Allen cannot, as a matter of law, establish the third element of his malicious prosecution claim:  that there was no probable cause to prosecute.  (Def. Mem. at 10-11.)  As with a false arrest claim, lack of probable cause is a complete defense to a malicious prosecution claim.  *Savino v. City of New York*, 331 F.3d 63, 72 (2d Cir. 2003) (citing *Colon v. City of New York*, 60 N.Y.2d 78, 82 (1983)).  On this point, Defendants essentially reiterate their defense to Allen's false arrest claim, arguing that his malicious prosecution claim is defective because probable cause existed for his arrest.  According to Defendants, the fact that Allen's arrest was lawful gives rise to a presumption that there was probable cause to prosecute, and Allen has failed to "'demonstrate that at some point subsequent to the arrest, additional facts came to light that negated probable cause.'"  (Def. Mem. at 10 (quoting *Dukes v. City of New York*, 879 F. Supp. 335, 342 (S.D.N.Y. 1995)).)

In *Dukes,* however, the case on which Defendants rely, the crime for which the plaintiff had been arrested – on the basis of probable cause – was apparently the same as the crime for which the plaintiff was then prosecuted.  In such a case, it makes sense that the existence of probable cause for the arrest would presumptively demonstrate probable cause for the prosecution, absent intervening circumstances that could serve to "dissipate" the original rationale for the arrest.  *See Ferlito v. Oswego*, No. 03 Civ. 96, 2006 U.S. Dist. LEXIS 54561, at *33 (N.D.N.Y. Aug. 4, 2006) (quoting *Kinzer*, 316 F.3d at 144)).  The analysis is conceptually different in cases involving multiple charges, where the prosecution at issue may be for a crime other than that which justified the defendant's arrest.  Defendants fail, in their papers, to acknowledge or address this distinction.

35

Where there is probable cause to arrest a criminal defendant for one crime, but the defendant is prosecuted for another, a finding of probable cause to arrest does not suffice to show probable cause to prosecute. *Davis v. City of New York*, 373 F. Supp. 2d 322, 333-34 (S.D.N.Y. 2005). Similarly, where a defendant is arrested and prosecuted for multiple crimes, the fact that the arrest might have been lawful because the police had probable cause to believe the defendant had committed at least *one* of those crimes is not, in itself, sufficient to demonstrate a basis for his prosecution for *all* of the crimes. *See Ahern*, 411 F. Supp. 2d at 151 (concluding that although probable cause existed to prosecute for skateboarding and possession of marihuana, plaintiff's malicious prosecution claim as to resisting arrest survived summary judgment); *Luthe v. City of Cape May*, 49 F. Supp. 2d 380, 396 (D.N.J. 1999) (concluding that "existence of probable cause to arrest [plaintiff] on the charges of harassment and criminal mischief does not prevent her from maintaining a cause of action for malicious prosecution on the baseless charge of burglary"); *see also Kavazanjian v. Rice*, No. 03 Civ. 1923, 2005 U.S. Dist. LEXIS 13653, at *9-10 (E.D.N.Y. June 6, 2005) ("Unlike an arrest, which only requires probable cause that 'the suspect had committed . . . *an* offense[,]' a prosecution requires probable cause 'to charge [the suspect] with *each* of the crimes.'") (quoting *Lowth v. Town of Cheektowaga*, 82 F.3d 563, 569, 571 (2d Cir. 1996)) (emphasis added). Even where a defendant is ultimately convicted on one charge, this will not necessarily establish that there was probable cause to prosecute that defendant on any other charge. *See Ostroski*, 2006 U.S. Dist. LEXIS 50229, at *19-20 (noting that Second Circuit has found that a "conviction on one claim does not necessarily absolve liability under § 1983 for malicious prosecution as to other criminal charges

which were resolved favorably to plaintiff") (citing *Janetka v. Dabe*, 892 F.2d 187, 190 (2d Cir. 1989)).

In this case, as discussed above, there is little question that Allen's concession that he refused a direct order issued by correction officers demonstrates that there was at least probable cause for the officers to arrest him for obstructing governmental administration, and this, in turn, gives rise to a presumption that there was probable cause to prosecute him on that same charge. Allen's concession, however, does *not* demonstrate that there was probable cause for his prosecution for assault, a distinct and more serious charge. *See Posr v. Doherty*, 944 F.2d 91, 100 (2d Cir. 1991) (concluding that trial court erred in instructing jury that "probable cause finding as to one of the charges would amount to a finding for all three," and emphasizing that each charge must be analyzed separately for probable cause in malicious prosecution case).

It is significant here that the elements of assault are markedly different from the elements of the other crimes with which Allen was charged. *See Ostroski*, 2006 U.S. Dist. LEXIS 50229, at *25-26 (allowing plaintiff to proceed beyond summary judgment with malicious prosecution claim for obstruction of governmental administration charge, despite harassment conviction, as "they have differing elements"); *Davis*, 373 F. Supp. 2d at 334 (holding that "probable cause for simple trespass does not preclude a malicious prosecution claim as to the unlawful posting charge because the two charges involve 'distinct' elements and 'distinct' conduct") (citations omitted). Moreover, given the potential for prosecutorial abuse, it would be particularly inappropriate for the Court to conclude that the existence of probable cause to prosecute Allen for the relatively minor crimes of obstruction (a misdemeanor) and harassment (a violation) could automatically bar any challenge to his prosecution for assault, which was charged not only

37

as a misdemeanor, but also as a felony (*see* Eichenholtz Decl., Ex. B), and which thus plainly

implicated "more culpable[] behavior." *Posr*, 944 F.2d at 100; *see also id.* ("If the rule were

[that the charges need not be analyzed separately, then] an officer with probable cause as to a

lesser offense could tack on more serious, unfounded charges which would support a high bail or

a lengthy detention, knowing that the probable cause on the lesser offense would insulate him

from liability for malicious prosecution on the other offenses.").

      In this case, the parties vigorously dispute the facts that would establish whether there

was probable cause for Allen's prosecution for assault.  By deposition testimony, Allen flatly

denies that he kicked Merced – the only purported basis for the assault charge – and claims that

Merced invented this accusation against him, presumably in an attempt to divert attention from

Merced's own alleged misconduct.  (*See* Eichenholtz Decl., Ex. C, at 45, 59-60; *see also* Pl.

Opp. at 4, 6).  Although Merced proffers medical documentation from the Correctional Health

Services, showing that he was seen after the incident for a complaint of pain around the knee, the

only reported medical finding was of subjective "tenderness."  (*See* Eichenholtz Decl., Ex. E.)

The absence of any objective findings, such as findings of bruising, laceration, or swelling,

leaves at least some room for doubt as to the veracity of Merced's complaint.  While a jury could

find Merced to be truthful, so, too, on the evidentiary record, could it find Allen's sworn denial

of the assault to be credible.

      In short, viewing the evidence in the light most favorable to Allen, a reasonable fact-

finder could conclude that the decision to prosecute Allen for assault was secured through

Merced's bad faith or perjury, and not through probable cause.  *See Taylor v. City of New York*,

No. 03 Civ. 6477, 2006 U.S. Dist. LEXIS 41429, at *13-14 (S.D.N.Y. June 21, 2006) (denying

summary judgment on plaintiff's malicious prosecution claim where there were two versions of events as to whether plaintiff sold drugs to undercover officers); *Reid v. New York County Dist. Attorney Ray Marrinaccio*, No. 00 Civ. 5164, 2004 WL 1488194, at *6 (S.D.N.Y. July 1, 2004) (where parties presented "competing affidavits," summary judgment was inappropriate on plaintiff's malicious prosecution claim) (internal quotation marks and citations omitted); *Brome v. City of New York*, No. 02 Civ. 7184, 2004 U.S. Dist. LEXIS 3943, at *18-19 (S.D.N.Y. Mar. 15, 2004) (denying summary judgment on malicious prosecution claim where defendant's account of events differed from plaintiff's, creating a question of fact); *see also Curry v. City of Syracuse*, 316 F.3d 324, 333 (2d Cir. 2003) (noting that "credibility assessments, choices between conflicting versions of the events, and the weighing of evidence are matters for the jury, not for the court on a motion for summary judgment") (internal quotation marks and citations omitted).  In light of the conflict between the parties' accounts of relevant events, Allen's malicious prosecution claim presents a triable factual issue as to probable cause.

### c.    Malice

For a malicious prosecution claim to survive summary judgment, the plaintiff must also show that a triable issue of fact exists as to whether the prosecution was motivated by malice. "Under New York law, malice does not have to be actual spite or hatred, but means only that the defendant must have commenced the criminal proceeding due to a wrong or improper motive, something other than a desire to see the ends of justice served." *Lowth*, 82 F.3d at 573 (internal quotation marks and citations omitted).  Here, genuine issues of material fact remain in dispute regarding Merced's state of mind in initiating the criminal prosecution.

As discussed above, Allen contends that Merced fabricated the facts used to charge Allen with assault. Knowingly filing a false report is strong evidence of malicious intent. *See Chimurenga*, 45 F. Supp. 2d at 343-44 (citation omitted) (noting that where there is a triable issue as to probable cause, there will almost always be a triable issue as to malice, which is "even more the case where, as here alleged, the defendants attempted to falsely create a sham probable cause") (citation omitted); *Morillo v. City of New York*, No. 95 Civ. 2116, 1997 U.S. Dist. LEXIS 1665, at *18 (S.D.N.Y. Feb. 20, 1997) (granting plaintiff's motion for summary judgment on malicious prosecution claim where "the foundation of the prosecution of [plaintiff] was perjury and false evidence"). A jury in this case could reasonably infer that, if Merced knew that Allen was likely to file a complaint about him, then he might have been motivated to make Allen appear to be the aggressor. Thus, a jury could find that, in pressing assault charges against Allen, Merced was motivated by something other than the "desire to see the ends of justice." *Davis*, 373 F. Supp. 2d at 336 (citation omitted) ("If defendants fabricated in their criminal complaint facts that, if true, would have been sufficient to constitute probable cause for the crimes with which plaintiffs were charged and a reasonable fact-finder could so conclude, then a genuine issue exists as to defendants' states of mind and credibility.").

### d. <u>Deprivation of Liberty</u>

Finally, Defendants assert that Allen's malicious claim fails because he cannot show that he suffered a post-arraignment seizure in violation of the Fourth Amendment, in light of the fact that he was, in any event, subject to incarceration on federal charges during the time the state criminal charges were pending against him. Courts have held, for purposes of a malicious prosecution claim, that "an inmate already incarcerated has not suffered any unconstitutional

deprivation of liberty as a result of being charged with new criminal offenses." *Holmes v. Grant*, No. 03 Civ. 3426, 2006 U.S. Dist. LEXIS 15743, at \*43-44 (S.D.N.Y. Mar. 31, 2006); *accord Wright v. Kelly*, No. 95 Civ. 0688H, 1998 U.S. Dist. LEXIS 20424, at \*9 (W.D.N.Y. Oct. 16, 1998). Allen, for his part, argues that, despite his federal prison sentence, he suffered a deprivation of liberty because his overall prison term was effectively lengthened, as a result of the time (post-arraignment) that he spent in state custody, awaiting resolution of the state charges.

This Court cannot conclude, on the record before it, that Allen is incorrect in his analysis on this point. First, the cases relied upon by Defendants involved very different factual scenarios and are thus largely inapposite. In those cases, the plaintiffs identified as the Fourth Amendment violation their forced appearance at court proceedings to defend against criminal charges. *See Holmes*, 2006 U.S. Dist. LEXIS 15743, at \*43-44 (concluding that prisoner-plaintiff had not been deprived of liberty for purposes of malicious prosecution claim where inmate was "being charged with new criminal offenses and being forced to appear in court to defend himself"); *Wright*, 1998 U.S. Dist. LEXIS 20424, at \*9 (refusing to "find the fact that plaintiff was required to appear at court proceedings . . . to be a deprivation of liberty of a constitutional dimension"). This is a very different situation than one in which a plaintiff's period of incarceration is lengthened. Incarceration, of any duration, represents a significant deprivation of liberty, sufficient to implicate the Fourth Amendment. *See Thompson v. Sweet*, 194 F. Supp. 2d 97, 102 n.5 (N.D.N.Y. 2002) ("Because [plaintiff] alleges that he was required to remain in jail for twelve days during the pendency of the prosecution, he has alleged a sufficient deprivation of liberty.").

41

Second, the record does not clearly establish, as Defendants suggest (*see* Def. Mem. at 12-13), that Allen is mistaken on the question of whether his period of incarceration was actually extended. In support of his position, Allen includes a transcript from his state parole revocation hearing, held on June 1, 2001. (Pl. Aff., Ex. C (Transcript of Oral Argument, *In the Matter of the Parole Revocation Hearing of Jamel Allen*, dated June 1, 2001).) As described above, Allen had been on parole after serving prison time for a state drug conviction, when he was arrested on a new federal weapons possession charge. In his ruling revoking Allen's state parole, the hearing officer specified that Allen was to "complete his parole while in Federal custody." (*Id.* at 7.) This transcript provides support for Allen's claim that he would have been serving his federal and remaining state sentences concurrently in federal prison, from June 2001 through July 2002, were it not for the state criminal proceedings initiated as a result of Merced's false complaint. While Defendants dispute this, they provide no evidence in support of their position that Allen's sentence was not lengthened as a result of the state criminal prosecution.

Thus, as to defendant Merced, Allen has demonstrated that triable issues of fact exist as to each of the elements of malicious prosecution addressed by Defendants in their motion, and I therefore recommend that Allen be permitted to proceed with this claim against Merced.

### 4. Qualified Immunity

Merced has also raised a defense of qualified immunity on the claim of malicious prosecution.[14] As discussed above, law enforcement officials are entitled to qualified immunity

---

[14] Once again, all individual defendants argue that they are entitled to qualified immunity. The Court, however, need not engage in this analysis for defendants Sakellardis, Crespo, and Reyes because it has already concluded that Allen's malicious prosecution claim as to these defendants should be dismissed. (*See supra* at 25 n.12.)

from personal liability under Section 1983 where their conduct does not violate a clearly established constitutional right of which a reasonable person would have known, or where the officers had an objectively reasonable belief that their actions did not violate those rights.  (*See* discussion *supra* at Point III(A)(4).)

"The right to be free from malicious prosecution is a clearly established right."  *Bonide Products, Inc. v. Cahill*, 223 F.3d 141, 145 (2d Cir. 2000).  "[D]efendants may nevertheless enjoy qualified immunity if it was objectively reasonable for them to believe that their actions did not violate that right."  *Id.* (internal quotation marks and citations omitted).

Once again, Merced is not entitled summary judgment on the ground of qualified immunity, as material questions of fact remain in dispute as to the reasonableness of his conduct. (*See generally* discussion *supra* at Part III(A)(4).)  Any reasonable officer would have known that Allen's right to be free from malicious prosecution would be violated by filing baseless charges without probable cause, and providing false information to prosecutors.  *See Ostroski*, 2006 U.S. Dist. LEXIS 50229, at *31-32 (citing *Weyant v. Okst*, 101 F.3d 845, 858 (2d Cir. 1996)) (denying officers qualified immunity where there was dispute as to whether officers had fabricated basis for probable cause to prosecute); *see also Ricciuti v. New York City Transit Authority*, 124 F.3d 123, 130 (2d Cir. 1997) (finding that officers not entitled to qualified immunity where defendants had allegedly conspired to fabricate and forward to prosecutors plaintiff's confession to influence criminal proceedings).  Accordingly, granting Merced summary judgment on Allen's malicious prosecution claim, on the basis of qualified immunity, would be inappropriate.

D.    *Monell* **Claim Against the City of New York**

In order to maintain his claim against the City, Allen would have to come forward with evidence capable of showing that the alleged constitutional violations in this case resulted from an official policy, custom, or practice, or from a knowing failure of supervisory officials to supervise and train municipal employees. *See Monell v. Dep't of Social Serv.,* 436 U.S. 658, 690-91 (1978). Conclusory allegations of municipal liability will not suffice to defeat a motion for summary judgment on a *Monell* claim. *See Singleton v. City of Newburgh*, 1 F. Supp. 2d 306, 311-12 (S.D.N.Y. 1998) (to defeat a motion for summary judgment, a plaintiff must do more than simply recite allegations of municipal liability, he must come forward with evidence that the municipality, alerted to the possible use of excessive force by its officers, did nothing to rectify the situation); *Basnight*, No. 97 Civ. 1312, 2003 WL 722810, at *3 (E.D.N.Y. Mar. 4, 2003) (conclusory allegations of municipal liability cannot survive motion for summary judgment).

Here, Allen has pleaded, in wholly conclusory terms, that the City knowingly allowed correction officers at Rikers Island to maintain a "custom" of beating prisoners, and failed to provide adequate "training," "disciplin[e]," and "monitoring" of the Rikers Island facility. (2d Am. Compl. ¶ 16.) Further, when questioned at his deposition about the basis of his claim against the City, Allen testified only as follows:

> Q.    What is your claim against the City of New York?
>
> A.    That I was assaulted. That I was assaulted by correctional officers. I was forcibly arrested, false infraction. The loss of fifteen months, and a hundred days in solitary confinement.
>
> Q.    What is it that the City of New York did

> A.    Huh?  What did the City do?
>
> Q.    Yes.
>
> A.    The Department of Corrections, the supervisors, the
>        Department of Corrections – you know, they have
>        responsibility for the Department of Corrections.  That's
>        why I had to go through the City of New York.

(Eichenholtz Decl., Ex. C, at 73-74).  This testimony represents nothing more than an

articulation of a *respondeat superior* theory of liability, which is insufficient to support Allen's

claim against the City.  *See Zahra v. Town of Southold*, 48 F.3d 674, 685 (2d Cir. 1995) (citing

*Monell*, 436 U.S. at 691) (noting that a "municipality may not be held liable in an action under

42 U.S.C. § 1983 for actions alleged to be unconstitutional by its employees below the

policymaking level solely on the basis of *respondeat superior*").

Allen was made aware by this Court, as early as June 2002, that, in order to maintain a

*Monell* claim, he would have to be able to demonstrate a policy, practice, or custom by the City.

Indeed, in its June 11, 2002 Order, the Court dismissed Allen's initial complaint against the City

on the ground that Allen had failed to allege facts sufficient to show that his injures were caused

by "an official adopted policy or custom."  (*Id.* at 3.)  Moreover, in supervising discovery in this

matter, this Court afforded Allen every reasonable opportunity to develop an evidentiary record

on his claims.  Yet, in opposition to summary judgment, Allen now presents nothing more than

an online article from "CNN.com" (Pl. Aff., Ex. J ("Rikers Island Guards Beat Inmates for

Years," CNN.com, dated Aug. 16, 1998)), which he initially referred to in his Second Amended

Complaint (*see* 2d Am. Compl. ¶ 16).  The CNN article, dated August 16, 1998, reports that,

over the prior decade, inmates of Rikers Island jail had been routinely beaten, and correction

officers had taken steps to conceal these assaults.  (Pl. Aff., Ex. J.)  The Court, however, cannot

consider this article in assessing Allen's opposition to summary judgment.  Such evidence

constitutes inadmissible hearsay, which is "unusable to defeat summary judgment."  *Gonzalez v.*

*City of New York*, 354 F. Supp. 2d 327, 347 n.29 (S.D.N.Y. 2005) (noting that "newspaper

articles are inadmissible hearsay and unusable to defeat summary judgment") (internal quotation

marks and citations omitted).

Furthermore, even if the CNN article were admissible, this article alone would be

insufficient to establish the requisite custom or policy.  *See Richardson v. Nassau County*, 277 F.

Supp. 2d 196, 204 (E.D.N.Y. 2003) (finding one-paragraph newspaper article, cited by plaintiff,

to be insufficient to show municipal policy); *see also Lynch v. Averill*, No. 99 Civ. 2770, 2001

U.S. Dist. LEXIS 6098, at *3 (E.D.N.Y. May 9, 2001) (denying motion to add city as defendant,

where only evidence of policy or practice by city was newspaper articles offered to show

"widespread unprovoked and excessive use of force" by correction officers).  The record, as

presented in this case, simply lacks sufficient evidence to show a municipal custom or policy that

could support the City's liability for the alleged constitutional violations.

Finally, the Court sees no reason to reconsider its prior decision denying Allen's

application to reopen discovery for the limited purpose of developing his *Monell* claim against

the City, in opposition to Defendants' motion.  Summary judgment is inappropriate when the

non-moving party has not "had the opportunity to discover information that is essential to his

opposition [to summary judgment]."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 n.5

(1986).  "But the trial court may properly deny further discovery if the nonmoving party has had

a fully adequate opportunity for discovery."  *Trebor Sportswear Co., Inc. v. The Limited Stores,*

*Inc.*, 865 F.2d 506, 511 (2d Cir. 1989) (citations omitted) (denying request for additional

46

discovery under Rule 56(f)); *see also Yrityspankki Skop Oyj v. Delta Funding Corp.*, No. 98 Civ. 7888, 1999 U.S. Dist. LEXIS 17463, at *11-12, (S.D.N.Y. Nov. 9, 1999) (denying motion to reopen discovery where party was fully aware of the relevance of the information in question during discovery, and since it could have developed information at that time).

There is no question here that, from the outset of this litigation, Allen was made aware of the required elements of a *Monell* claim; there are no circumstances suggesting that he had anything less than a full opportunity to discover evidence relevant to his claims; and he has failed to present the Court with any explanation as to why he has waited until this late date to seek particular types of disclosure. Accordingly, the discovery process should not be reopened, and summary judgment should be granted on Allen's claims against the City, which are unsupported by any competent evidence in the record.

### E.    Other Potential Claims

In the course of their briefing, the parties refer to two other claims that have potentially been raised in this case. First, in their motion papers, Defendants note that Allen had, at one point, filed a Notice of Claim against the City for assault. (*See* Def. Mem. at 24-25.) Defendants argue that, to the extent Allen's pleading is construed to include a state law assault claim, such claim should be rejected by the Court. Second, in his opposition papers, Allen appears to raise a potential due process or retaliation claim. On the pleadings and record presented, I do not recommend that the Court permit Allen to proceed at this time with either of these potential claims.

The first of these potential claims, the state law assault claim, cannot be found anywhere in Allen's pleading, even affording it the most liberal of readings. Nor does Allen argue in

connection with Defendants' summary judgment motion that he ever intended to plead such a claim in this case. Therefore, in order for the Court to consider such a claim, it would have to reach beyond the claims that Allen has actually chosen to pursue in this action. The Court should not engage in such an exercise.

As to the potential due process/retaliation claim, to the extent that Allen has arguably pleaded such a claim, he fails to present adequate proof to support his allegations. Allen appears to contend that his due process rights were violated when Defendants' issued a false misbehavior report against him, resulting in his having to serve 100 days in solitary confinement. (Pl. Opp. at 7.) The filing of baseless charges against an inmate, however, does not itself give rise to a constitutional violation. *See Freeman v. Rideout*, 808 F.2d 949, 951 (2d Cir. 1986). An inmate "has no constitutionally guaranteed immunity from being falsely or wrongly accused of conduct which may result in the deprivation of a protected liberty interest." *Id.* Rather, to maintain an actionable claim against correction officers for filing a false misbehavior report, a plaintiff must be able to show either: (1) that he was disciplined without adequate due process, as a result of the report; or (2) that the report was issued in retaliation for exercising a constitutionally protected right. *See Taylor v. Macomber*, No. 97 Civ. 4127, 1999 WL 349696, at *4 (S.D.N.Y. May 27, 1999).

At no point does Allen suggest that the processes available to him to challenge the misbehavior report were deficient. Significantly, he makes no allegation, much less offers any evidence to suggest, that he was denied any opportunity for redress, or that there were procedural defects in the available grievance process. *See Ramirez v. Holmes*, 921 F. Supp. 204, 209 (S.D.N.Y. 1996) (dismissing constitutional claim arising from false misbehavior report on

48

12(b)(6) motion, where plaintiff did not allege "that any action was taken as a result of the allegedly false report, that he was denied the opportunity to contest the report, or that no hearing or grievance procedure was available to him"); *Taylor*, 1999 WL 349696, at *4 (dismissing plaintiff's due process claim against defendants for filing false misbehavior report, where plaintiff did not allege that there was a constitutionally defective discipline hearing); *see also Greaves v. New York*, 958 F. Supp. 142, 144 (S.D.N.Y. 1997) ("the failure to conduct a constitutionally adequate disciplinary hearing may give rise to a § 1983 action, but the mere filing of a false misbehavior report against an inmate does not").

As to retaliation, although Allen seems to suggest that the misbehavior report was retaliatory (Pl. Opp. at 7-9), he fails to assert, as an underlying matter, that he engaged in any constitutionally protected activity. Allen also proffers no evidence capable of demonstrating that a connection existed between any protected speech or conduct and the false misbehavior report. *See Gayle v. Gonyea*, 313 F.3d 677, 682 (2d Cir. 2002) (in alleging retaliatory punishment, plaintiff "bears the burden of showing that the conduct at issue was constitutionally protected and that the protected conduct was a substantial or motivating factor in the prison officials' decision to discipline the plaintiff") (internal quotation marks and citations omitted). Accordingly, to the extent Allen has raised a due process or retaliation claim in this case, I recommend that the Court grant summary judgment in Defendants' favor on that claim, as Allen has not offered any evidence capable of supporting it.

## CONCLUSION

For the foregoing reasons, I recommend that Defendants' motion for summary judgment be granted as to defendants Sakellardis, Crespo, Reyes, and the City of New York, and that all of Allen's claims against these defendants be dismissed.  As to defendant Merced, I recommend that the motion for summary judgment be granted as to Allen's Section 1983 claim predicated on false arrest, but denied as to the Section 1983 claims predicated on the use of excessive force, and malicious prosecution.  Finally, I recommend that the Court decline to reach any state law assault claim not pleaded in this action, and, to the extent Allen may have attempted to plead a due process or retaliation claim, that the Court dismiss any such claim on summary judgment, as to all Defendants.

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from service of this Report to file written objections.  *See also* Fed. R. Civ. P. 6.  Such objections, and any responses to objections, shall be filed with the Clerk of Court, with courtesy copies delivered to the chambers of the Honorable Richard J. Holwell, United States Courthouse, 500 Pearl Street, Room 1950, New York, New York 10007, and to the chambers of the undersigned, United States Courthouse, 500 Pearl Street, Room 525, New York, New York, 10007.  Any requests for an extension of time for filing objections must be directed to Judge Holwell.  FAILURE TO FILE OBJECTIONS WITHIN TEN (10) DAYS WILL RESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW.  *See Thomas v. Arn*, 474 U.S. 140, 155 (1985); *IUE AFL-CIO Pension Fund v. Herrmann*, 9 F.3d 1049, 1054 (2d Cir. 1993); *Frank v. Johnson*, 968 F.2d 298, 300 (2d

Cir. 1992); *Wesolek v. Canadair Ltd.*, 838 F.2d 55, 58 (2d Cir. 1988); *McCarthy v. Manson*, 714

F.2d 234, 237-38 (2d Cir. 1983).

Dated: New York, New York
     September 29, 2006

Respectfully Submitted,

*[signature]*

DEBRA FREEMAN
United States Magistrate Judge

Copies to:

The Honorable Richard J. Holwell, U.S.D.J.

Mr. Jamel "Abdula" Allen, # 48177-054
Federal Correctional Institution
P.O. Box 1000
Otisville, NY 10963

Elizabeth Daitz, Esq.
Assistant Corporation Counsel
100 Church St.
New York, NY 10007