**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JAMEL "ABDULA" ALLEN,<br><br>      Plaintiff,<br><br>      v.<br><br>CAPT. SAKELLARDIS, C.O. CRESPO, AND C.O. MERCED,<br><br>      Defendants. | 02 Civ. 4373 (RJH) (DCF) |

**SUPPLEMENTAL MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION FOR REVISION OF THIS COURT'S MEMORANDUM AND ORDER DENYING DEFENDANT MERCED SUMMARY JUDGMENT ON PLAINTIFF'S MALICIOUS PROSECUTION CLAIM**

          **PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**
          1285 Avenue of the Americas
          New York, New York 10019-6064
          (212) 373-3000

          *Attorneys for plaintiff Jamel "Abdula" Allen*

January 7, 2008

## **TABLE OF CONTENTS**

Page

Preliminary Statement ..................................................................................................................1

Facts    2

Argument ......................................................................................................................................6

I.  DEFENDANTS' MOTION FOR REVISION OF THE SUMMARY JUDGMENT DECISION SHOULD BE DENIED. ...............................................................................6

A.  There Is Genuine Issue For Trial On Mr. Allen's Malicious Prosecution Claim. ....... 6

B.  A § 1983 Claim Is An Appropriate Remedy With Respect To The Malicious Prosecution Claim. ..................................................................................................12

CONCLUSION ............................................................................................................................14

**Preliminary Statement**

There is no basis for revision of the Court's March 28, 2007 decision to deny defendant Merced summary judgment on plaintiff Jamel Allen's malicious prosecution claim. Notwithstanding the purported "new evidence" defendants proffer in their Rule 54(b) motion, there remains a genuine issue for trial on the question whether Mr. Allen's prison time was effectively lengthened as a direct result of the pre-trial detention caused by the state assault charges initiated by defendant Merced.

Defendants argue that Mr. Allen's prison time could not have been lengthened by the state assault charges because two-thirds of any parole violation sentence must be served in state custody anyway, where the State has first arrested a defendant, and therefore has primary custodial jurisdiction over him. Defendants further contend that a state parole revocation judge does not have authority to alter this scheme by ordering a defendant in primary state custody to serve his state sentence in federal custody concurrent with a federal sentence.

It is well-established, however, that the State itself can alter this scheme if it agrees to a plea bargain that expressly provides that the defendant will serve concurrent sentences, and waives the State's priority of jurisdiction over the defendant to permit his state sentence to be served concurrent with the federal sentence in federal custody. *See, e.g.*, *United States* v. *Gonzalez*, No. 194 Cr. 313 (CSH), 1998 WL 691080, at *1, *2 (S.D.N.Y. Sept. 30, 1998); *Shumate* v. *United States*, 893 F. Supp. 137, 142-43 (N.D.N.Y 1995).

As explained below, the available evidence indicates that Mr. Allen and the State reached such a plea bargain pursuant to which the State agreed to allow Mr. Allen to serve his parole violation sentence concurrent with his federal sentence, and waived its priority of jurisdiction over Mr. Allen in order to permit him to serve the state sentence in federal custody. The evidence also demonstrates that a parole revocation judge subsequently implemented this

1

plea agreement, and that all of the parties at the parole revocation hearing—Mr. Allen, his counsel, the parole revocation specialist acting as the representative of the State, and the Judge—understood that this concurrent sentencing scheme was <u>the</u> <u>sole</u> benefit of the plea bargain accruing to Mr. Allen.

Thus, but for the pretrial detention on the state assault charges, which were pending at the time of the June 1, 2001 plea agreement and parole revocation hearing, Mr. Allen would have begun to serve his parole violation sentence concurrent with his federal sentence on or around this date. Mr. Allen remained in state custody until shortly after the state assault charges were dropped on June 28, 2002. Therefore, there is a genuine issue for trial as to whether Mr. Allen suffered a deprivation of liberty of approximately 13 months—from the date of his plea agreement and parole revocation hearing to the date of the dismissal of the assault charges—as a result of the state assault charges pursued and later dropped by defendant Merced. For this reason, defendants' Rule 54(b) motion should be denied.

## Facts

The malicious prosecution claim at the center of this motion stems from the April 16, 2001 incident at Rikers Island during which defendant Merced banged Mr. Allen's head repeatedly against the wall as he led Mr. Allen handcuffed down a stairwell. Following the incident, defendant Merced initiated state criminal assault charges against Mr. Allen for allegedly kicking him in the knee in the course of this incident. As a direct result of these charges, Mr. Allen was detained in pre-trial custody at Rikers for 13 months instead of being transferred to federal custody to serve his parole violation time concurrently with his federal sentence. Such a transfer would have been in accordance with the express terms of the June 1, 2001 plea agreement and the determination of the parole revocation judge implementing this agreement.

In March 1999, Mr. Allen was released to parole supervision following the completion of a three to six year sentence in state custody. Declaration of Jamel Abdula Allen dated January 4, 2007 at ¶ 2 ("Allen Decl."). While out on parole, on April 27, 1999, Mr. Allen was arrested for unlawful possession of a weapon. *Id.* at ¶ 3. Because Mr. Allen was first arrested by the New York Police Department, *see id.*, he remained in the primary custody of the State. However, Mr. Allen ultimately faced federal, rather than state, charges for this offense. *Id.*

On June 9, 1999, Mr. Allen was released on bail in the federal case. *Id.* at ¶ 4. However, because possession of a weapon also constituted a parole violation, the following day, on June 10, 1999, Mr. Allen was remanded to state custody on his parole violation. *Id.*

After Mr. Allen was transferred to state custody, he appeared before an administrative law judge who declined to sentence Mr. Allen on his parole violation pending the disposition of Mr. Allen's federal case. *Id.* at ¶ 5.

In June 2000, Mr. Allen was brought to trial before Judge Loretta Preska on the federal weapons charges, and he was found guilty by a jury. *Id.* at ¶ 6. On September 18, 2000, Judge Preska sentenced Mr. Allen to 210 months for this offense. Def. Mem. at Ex. B, Attachment B.

Following imposition of this sentence, Mr. Allen was returned to state custody at Rikers, on October 17, 2000, to await a hearing on his parole violation. *See* Def. Mem. at Ex. B, Attachment D. While at Rikers awaiting the parole revocation hearing, the April 16, 2001 incident giving rise to this lawsuit occurred. Allen Decl. at ¶ 8.

Shortly after the incident, Mr. Allen was charged by the State of New York with criminal assault of defendant Merced. *Id.* at ¶ 9.

3

On June 1, 2001, Mr. Allen appeared before Administrative Law Judge Luis Meringolo on his state parole violation. Def. Mem. at Ex. C. Prior to the commencement of the hearing, Mr. Allen, his attorney Kenneth Olsen, the State's representative Joseph Lake, and Judge Meringolo met to discuss a plea agreement. Allen Decl. at ¶ 11. At this meeting, the parties reached a plea bargain. Def. Mem. at Exh. C ("The record should reflect there was a pre-hearing conference and a plea-bargain was agreed to.").

Pursuant to this plea agreement, Mr. Allen plead guilty to one of the six parole violation counts brought against him, but was sentenced, nevertheless, to the maximum time remaining on his state sentence. *Id.* at ¶ 11-12. In exchange for his guilty plea, Mr. Allen was supposed to serve the maximum remaining time on his state sentence <u>concurrent</u> with the 210-month federal sentence previously imposed by Judge Preska in federal detention. *Id.* Judge Meringolo implemented the terms of the plea agreement, sentencing Mr. Allen "the maximum expiration of his sentence," and ordering Mr. Allen to "complete his parole while in federal custody." Def. Mem. Ex. C at p. 5.

Contrary to Mr. Allen's expectations and the terms of the plea agreement, Mr. Allen was not transferred to federal custody following the parole revocation hearing, and he was not permitted to begin serving his state and federal sentences simultaneously. Allen Decl. at ¶ 15, 18. Instead, Mr. Allen remained at Rikers for an additional 13 months while the state assault charges pursued by Defendant Merced remained pending. *Id.*

On June 28, 2002—approximately 13 months after the plea agreement and parole revocation hearing—the criminal assault charges against Mr. Allen were dropped. *Id.* at ¶ 16. Then, two weeks later, on July 15, 2002, Mr. Allen was transferred to federal custody at FCI

4

Otisville. Def. Mem. at Ex. B, Attachment D. On July 16, 2002, Mr. Allen finally began receiving credit toward his 210-month federal sentence. *Id.*

At no time during Mr. Allen's 13-month detention at Rikers was Mr. Allen informed that he was legally required to serve his parole violation sentence in state custody until he was eligible for "conditional release" to federal custody two-thirds of the way through this sentence. Allen Decl. at ¶ 18. Nor was he informed at any time prior to June 2002 that any conditional release date had been calculated, or that he would in fact be released to federal custody on that date. *Id.*

In this Court's March 27, 2007 Order and Memorandum denying defendants summary judgment on three of Mr. Allen's claims, the Court held that genuine issues of material fact exist as to each of the elements of malicious prosecution addressed by defendant Merced in his motion, including whether Mr. Allen suffered a deprivation of liberty as a result of the time he spent at Rikers awaiting resolution of the state criminal charges. *Allen v. City of New York*, 480 F. Supp. 2d 689, 696 (S.D.N.Y. 2007).

Now, more than six months after the Court's summary judgment decision, and almost two years after defendants filed their motion for summary judgment, defendants ask that the Court revise its summary judgment ruling on the basis of purported "new evidence" that establishes that two-thirds of any parole revocation sentence must be served in state custody.

5

**Argument**

**I.**

**DEFENDANTS' MOTION FOR REVISION
OF THE SUMMARY JUDGMENT
DECISION SHOULD BE DENIED.**

**A.   There Is Genuine Issue For Trial On Mr. Allen's Malicious Prosecution Claim.**

The "new evidence" defendants proffer as the basis for their Rule 54(b) motion[1] does nothing to change the Court's previous determination that there exists a genuine issue for trial regarding whether Mr. Allen suffered a deprivation of liberty as a direct result of the state criminal prosecution.

Specifically, defendants assert that because Mr. Allen was in the primary custodial jurisdiction of the State by virtue of his arrest by the New York Police Department for possession of a weapon, he was therefore legally required to serve his parole violation sentence

---

[1]   As a preliminary matter, defendants have failed to overcome the law of the case barrier to this Court's reconsideration of its prior summary judgment ruling. *Official Comm. of the Unsecured Creditors of Color Tile, Inc.* v. *Coopers & Lybrand, LLP*, 322 F.3d 147, 167 (2d Cir. 2003) (A district court's discretion to reconsider a non-final ruling pursuant to Rule 54(b) is "subject to the caveat that 'where litigants have once battled for the court's decision, they should neither be required, nor without good reason permitted, to battle for it again.'") (quoting *Zdanok* v. *Glidden Co.,* 327 F.2d 944, 953 (2d Cir. 1964). A prior decision in ongoing litigation "may not usually be changed unless there is an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent a manifest injustice." *Id.* (internal quotation marks omitted). Here, defendants hold out as "new evidence" the affidavits of two long-time employees of the New York State Department of Correctional Services ("DOCS") and the Federal Bureau of Prisons ("BOP"), which discuss, respectively, Mr. Allen's eligibility for "conditional release" from state custody two-thirds of the way through his state parole revocation sentence, and the calculation of his federal sentence. *See* Def. Mem. at Ex. A, Ex. B. These affidavits do not constitute "new evidence." Defendants had "ready access" to these individuals and, with reasonable diligence, could have developed this evidence prior to this Court's decision on their motion for summary judgment. *In re Ski Train Fire In Kaprun*, *Austria*, *on November 11, 2000*, 224 F.R.D. 543, 548 (S.D.N.Y. 2004). Under these circumstances, this Court should not exercise its discretion under Rule 54(b) "to reward [defendants'] failure to diligently and promptly develop its case . . . by giving it a second bite at the apple." *Id.*

in state custody until his "conditional release" date – a date mathematically-calculated by statute two-thirds of the way through the state sentence. Def. Mem. at 6-8. Defendants further contend that, even if Judge Meringolo intended to order Mr. Allen's parole violation sentence to be served in federal custody concurrent with his federal sentence, the Judge did not have the authority to do so because only the executive branch can "relinquish primary custodial jurisdiction and transport plaintiff into federal custody for service of concurrent sentences." Def. Mem. at 8, 11. According to defendants, the state criminal charges lodged against Mr. Allen in May 2001 therefore "had no bearing whatsoever" on Mr. Allen's transfer to federal custody just two weeks after the state assault charges were dropped, and his release following the dismissal of these charges was based solely on his mathematically-calculated conditional release date. Def. Mem. at 11, 8.[2]

These arguments do <u>not</u> affect the viability of Mr. Allen's malicious prosecution claim. This is why: the general rule is that, where the State is the sovereign to first arrest a defendant who will serve state and federal sentences, the State has priority of jurisdiction over the defendant for incarceration, and the defendant must therefore remain in the custody of the State until the state sentence has been served. *Shumate*, 893 F. Supp. at 139; *Gonzalez*, 1998 WL 691080, at *2. However, as defendants themselves acknowledge, there is an exception to this rule: the State may waive its "primary custodial jurisdiction" over a defendant in order to permit the defendant to serve a state sentence in federal custody concurrent with a federal sentence. *See*

---

[2] Defendants also argue that the federal judge had the authority to order Mr. Allen's federal sentence to run concurrent with his "yet-to-be-imposed" state sentence, and that Judge Preska's silence on the issue led the Bureau of Prisons to conclude, in its discretion, that Mr. Allen's federal sentence would run consecutive to his state sentence. Def. Mem. at 8-10. For purposes of this motion, Mr. Allen does not address this argument because it is irrelevant to the basis for his opposition here.

7

Def. Mem. at 11; *see also Gonzalez*, 1998 WL 691080, at *2 (quoting *United States* v. *Warren*, 610 F.2d 680, 685 (9th Cir. 1980)) ("Although relinquishment can occur as a natural consequence of certain events in the course of a criminal prosecution such as release on bail or dismissal of the charges, a sovereign with primary jurisdiction may . . . 'elect under the doctrine of comity to relinquish it to another sovereign.'").

As the Court in *Gonzalez* expressly held, one way in which the State may relinquish its primary jurisdiction is by reaching a plea bargain with a defendant that provides, as an explicit, negotiated term of the plea agreement, that the defendant will serve his state sentence concurrent with a federal sentence, and that the State will waive its priority of jurisdiction in order to permit the defendant to serve his state sentence <u>in</u> <u>federal</u> <u>custody</u>. *See Gonzalez*, 1998 WL 691080, at *2-3; *see also Shumate*, 893 F. Supp. at 141-43; *United States* v. *McCrary*, 220 F.3d 868, 870 (8th Cir. 2000) (recognizing *Shumate* for the proposition that a defendant may bargain for "the place of his incarceration" as between two sovereigns as a "term of a plea agreement"). Once the State has expressly agreed to waive its primary jurisdiction so that a defendant will serve concurrent sentences in federal custody, a court has the authority to implement the sentencing scheme contained in the plea agreement. *See Shumate*, 895 F.Supp. at 141 (("[T]he rule of primary jurisdiction is [not] so narrow as to . . . preclude the Court . . . from implementing the sentencing scheme previously negotiated."); *Gonzalez*, 1998 WL 691080, at *2-3. Accordingly, notwithstanding defendants' arguments as to the calculation of Mr. Allen's conditional release date and the limits of Judge Meringolo's authority, as a matter of law, it is clear that Mr. Allen would have been entitled to serve concurrent sentences in federal custody if the State's relinquishment of its priority of jurisdiction was an explicit, negotiated term of the plea agreement.

8

And that is what happened here. As evidenced by the accompanying Declaration of Mr. Allen and the transcript of the parole revocation hearing,[3] *see* Def. Mem at Ex. C, the State—through its representative, parole revocation specialist Joseph Lake—<u>did</u> in fact agree, as an explicit, negotiated term of the plea agreement, that Mr. Allen would serve his state sentence concurrently with his federal sentence, <u>and</u> that the place of Mr. Allen's incarceration would be federal custody, notwithstanding the State's priority of jurisdiction over him. *See Gonzalez*, 1998 WL 691080, at *2-3, *Shumate*, 893 F. Supp. at 139. Specifically, Mr. Allen agreed to plead guilty to only one of six counts, but to serve the <u>maximum</u> remaining time on his state sentence for this count – a term of over four-and-a-half-years. Allen Decl. at ¶¶ 11-12. In exchange for Mr. Allen's guilty plea, Mr. Lake, the parole revocation specialist and representative of the State, expressly agreed that Mr. Allen's state sentence would run together with his federal sentence <u>in federal custody</u>. *Id.* Mr. Lake's explicit agreement on behalf of the State to have Mr. Allen serve his state time in federal custody evidences the State's waiver of its priority of jurisdiction over Mr. Allen, as a negotiated term of the plea bargain, in order to effectuate the concurrent sentencing scheme.[4] Importantly, Mr. Lake's promise that Mr. Allen would serve his state

---

[3] We have endeavored, without success, to locate the other key players at the parole revocation hearing, including Joseph Lake, Kenneth Olsen, and Luis Meringolo.

[4] Not surprisingly, Mr. Allen does not recall whether Mr. Lake used a precise, legal term of art—such as "waiver" or "relinquishment" of "primary custodial jurisdiction" or "priority of jurisdiction"— to characterize the State's end of the plea bargain, and as noted, *supra* note 3, we have been unable to locate Mr. Lake. However, the State's explicit agreement that Mr. Allen would serve his concurrent state sentence in federal custody, notwithstanding its priority of jurisdiction, is sufficient to constitute an "express" waiver of priority of jurisdiction, particularly in the context of this informal administrative proceeding. *See Gonzalez*, 1998 WL 691080, at *3 (holding that a State does not "implicitly" waive jurisdiction by acquiescing in defendant's federal prosecution and imposing a concurrent sentence, and that, to show a valid waiver, a defendant must present "circumstances <u>amounting to</u> an explicit state waiver of its primary jurisdiction") (emphasis added).

9

sentence concurrent with his federal sentence in federal custody was the only consideration that Mr. Allen received in exchange for his agreement to serve the maximum remaining time on his state sentence for the one count. *Id.* at ¶ 12.

After the State and Mr. Allen reached this plea agreement, Judge Meringolo implemented the negotiated sentencing scheme at the parole revocation hearing in accordance with his legal authority to do so. *See Gonzalez*, 1998 WL 691080, at *2-3. The transcript of the hearing provides further evidence that Mr. Lake agreed to waive the State's priority of jurisdiction so that Mr. Allen could serve his concurrent state sentence in federal custody – *i.e.*, the basis of Mr. Allen's plea agreement with the State.

At the outset of the hearing, Mr. Allen's counsel, Mr. Olsen, explained to the Judge that, the benefit of the bargain to his client was the opportunity to serve the maximum remaining time on his state sentence concurrent with his federal sentence in federal custody:

> "[W]e're accepting. . .the recommendation of a hold to max mainly <u>because my client is in serving a new seventeen year Federal sentence and he will be maxing out while he's in Federal custody</u>. So that's why we're going with the hold to max in this case."

---

Further, even if this Court disagrees that the circumstances presented here "amount to a valid waiver" of the State's priority of jurisdiction, *see Gonzalez*, 1998 WL 691080, at *3, they at least provide strong circumstantial evidence of the fact that Mr. Lake relinquished the State's priority of jurisdiction in valid terms because Mr. Lake would have known that such a relinquishment was a prerequisite to implementing the agreed-upon sentencing scheme. Therefore, if the Court finds that the facts presented here are not sufficient to demonstrate an express waiver, Mr. Allen should be afforded an additional opportunity to contact the relevant supervisor at Division of Parole Bronx Six (since Mr. Lake cannot be located) and to "present any facts demonstrating an express waiver by the state – whether pre-existing or prospective." *See Gonzalez*, 1998 WL 691080, at *3 (holding, where "there might be facts surrounding the plea that amount to a valid waiver by the prosecutor," that defendant's counsel "could initiate discussions with the appropriate state authorities to determine whether the state would be inclined to waive its priority in explicit terms at the present time," and providing defendant the opportunity to make a supplemental submission to the court demonstrating that the State had made an express waiver of its primary jurisdiction).

10

Def. Mem. Ex. C at 5 (emphasis added). Mr. Lake, in turn, concurred with Mr. Olsen's explanation of the basis for the "hold-to-max" agreement on the one count: "I agree with what Mr. Olsen has says [sic], I have nothing further to add." Def. Mem. Ex. C at 5. Judge Meringolo then implemented the plea agreement, stating, that Mr Allen:

> was sentenced to seventeen years in Federal prison which is approximately 214 months . . . <u>He's going to complete his parole while in federal custody</u>. It's a joint recommendation, he plead guilty to [one count] and I'm going to hold him to the maximum expiration of his sentence.

Def. Mem. Ex. C at 5 (emphasis added). All of the principal players at the parole revocation hearing—Mr. Allen, Mr. Olsen, Mr. Lake and Judge Meringolo—therefore had the intent, understanding and belief that Mr. Allen would serve the maximum time remaining on his state sentence in federal custody concurrent with his federal sentence.

In sum, the undisputable legal authority of the State to waive its priority of jurisdiction, pursuant to a plea bargain, so that Mr. Allen would serve concurrent sentences in federal custody, and the evidence proffered by Mr. Allen to demonstrate that he in fact reached such an agreement with the State, refutes any basis for defendants' Rule 54(b) motion. Had it not been for the state assault charges brought on May 4, 2001, which remained pending at the time of Mr. Allen's plea agreement with the State and the parole revocation hearing, Mr. Allen would have been released to federal custody to begin serving the concurrent sentences on or around June 1, 2001, in accordance with the plea bargain and the determination of Judge Meringlo. *See Shumate*, 895 F.Supp. at 141 (a defendant is entitled to "receiv[e] the benefits contemplated by his acceptance of the . . . plea bargain[]" where the concurrent sentencing scheme and place of incarceration is an explicit, negotiated term of the plea agreement). Instead, Mr. Allen remained in state custody until shortly after the state assault charges were dismissed on June 28, 2002, and he did not begin receiving credit towards his federal sentence until his

11

release into federal custody on July 16, 2002. Even if Mr. Allen's eventual release on July 16, 2002 also coincided with his mathematically-calculated conditional release date, as defendants contend, there is a genuine issue for trial as to whether Mr. Allen suffered a deprivation of liberty of approximately 13 months—from the date of the plea agreement and parole revocation hearing to the date of the dismissal of the assault charges—as a direct result of the state assault charges pursued by defendant Merced.[5] For this reason, defendants' Rule 54(b) motion should be denied.

### B. A § 1983 Claim Is An Appropriate Remedy With Respect To The Malicious Prosecution Claim.

Defendants' assumption that Mr. Allen could not have been sentenced to serve concurrent state sentences in federal custody leads them to conclude, improperly, that Mr. Allen's only recourse for the 13 months of unlawful detention is through a *nunc pro tunc* designation by the Federal BOP of Rikers for service of Mr. Allen's federal sentence. Def. Mem. at 12-13. Although Mr. Allen intends to pursue this alternative route of redress, defendants are wrong that it is the only option available to him. As explained above, *supra* Part A, Mr. Allen has provided evidence to show that the state criminal prosecution pursued by defendant Merced unlawfully deprived him of his liberty by effectively lengthening his federal

---

[5] Indeed, the deprivation of liberty Mr. Allen suffered as a result of the pre-trial detention on the state assault charges is not inconsistent with his release on a mathematically-calculated conditional release date. It is possible, for example, that DOCS realized that Mr. Allen was due to be conditionally released on July 16, 2002, and therefore asked defendant Merced not to continue to press the state criminal charges in order to permit Mr. Allen's "timely" release into federal custody. In this scenario, but for the state assault charges that remained pending until shortly before his release into federal custody two-thirds of the way through his state sentence, Mr. Allen still would have begun to serve concurrent sentences in federal custody on or around June 1, 2001. Therefore, given that Mr. Allen has demonstrated a viable legal claim for malicious prosecution and evidence to support the element of deprivation of liberty at issue in this motion, he should prevail here even if defendants are correct that his July 16, 2002 release coincided with his mathematically-calculated conditional release date.

sentence. Because the evidence suggests that Mr. Allen served an additional 13 months as a direct result of the charges pursued by defendant Merced, 42 U.S.C. § 1983 affords Mr. Allen the right to seek redress from defendant Merced – the individual who deprived him of his constitutional rights. Mr. Allen should not be prevented from doing so merely because there exists an alternative path to relief.

        Notwithstanding Mr. Allen's right to pursue a malicious prosecution claim against defendant Merced, it is also true that the BOP could, upon Mr. Allen's request and in its discretion, designate Rikers for service of his federal sentence *nunc pro tunc*. *See McCarthy* v. *Doe*, 146 F.3d 118, 123 (2d Cir. 1998).[6] In exercising its broad discretion to designate a place of imprisonment pursuant to § 3621(b), the BOP will consider whether a number of factors weigh in favor of a *nunc pro tunc* designation, including a defendant's actions while under confinement in the state and federal systems, the intent of the state judge, and any other broadly relevant characteristics or circumstances of the defendant's case. *Barden* v. *Keohane*, 921 F.2d 476, 483 (3d Cir. 1991). However, even if the record is crystal clear regarding the intent of the state sentencing judge, BOP will at times deny the designation. *See, e.g.*, *Trowell* v. *Beeler*, 135 Fed. Appx. 590, 593 (4th Cir. 2005) (concluding that the BOP had discretion to deny prisoner's request, even though state court directed that its sentence was to be served concurrent with federal sentence). Moreover, even if BOP's failure to grant *nunc pro tunc* designation was a "result of mistake or inadvertence," it is a "matter within the Bureau's decision," and, on appeal

---

[6] Before seeking relief in a district court, a defendant must first exhaust the administrative procedures available under BOP regulations, 28 C.F.R. §§ 542.10-542.16. Exhaustion of these remedies involves a multi-step process, ranging from informal resolution of a complaint to raising that complaint to the BOP Regional Director and, ultimately, to the General Counsel of the BOP. *See id.* Although there are time periods specified for filing a complaint, we have been informed by BOP, in an informal capacity, that these specifications do not apply to sentencing issues.

to a federal court through habeas, 18 U.S.C. § 2241, the BOP's decision will lie unless a defendant has not received "fair treatment" on his application. *Barden*, 921 F.2d at 483. In short, appealing to BOP to designate Mr. Allen's time at Rikers *nunc pro tunc* for service of his federal sentence is a particularly uncertain path to a remedy in this case, and also a difficult path in light of the absence of a clear statement of the State's waiver in the transcript of the plea hearing. It is, nevertheless, a path that Mr, Allen will pursue – simultaneously with the instant lawsuit.

## CONCLUSION

For the foregoing reasons, defendants' Rule 54(b) motion for revision of this Court's March 27, 2007 memorandum and order denying defendant Merced summary judgment on Mr. Allen's malicious prosecution claim should be denied.

Dated: January 7, 2008
       New York, New York

**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**

By:  /s/ Jeh Charles Johnson
     Jeh Charles Johnson
     Koren L. Bell
     1285 Avenue of the Americas
     New York, NY 10018-6064
     (212) 373–3000
     jjohnson@paulweiss.com

*Counsel for plaintiff Jamel "Abdula" Allen*