UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

JAMEL "ABDULA" ALLEN,

        Plaintiff,

v.

CAPT. SAKELLARDIS, C.O. CRESPO, AND C.O. MERCED,

        Defendants.

02 Civ. 4373 (RJH) (DCF)

**DECLARATION OF JAMEL ABDULA ALLEN**

---

JAMEL ABDULA ALLEN declares, pursuant to 28 U.S.C. § 1746, as follows:

1. I am the plaintiff in this case, and I am currently incarcerated at the Federal Correctional Institution at Otisville, New York.

2. In 1996, I pled guilty to state charges of criminal possession of a controlled substance in the third degree and was sentenced to a prison-term of three to six years. I began serving this sentence on May 10, 1996 and was released on parole in March 1999.

3. While on parole, on April 27, 1999, I was arrested for unlawful possession of a weapon. Although I was arrested by the New York Police Department, I was prosecuted in federal court on federal weapons charges.

4. On June 9, 1999, I was released on bail from federal custody. The following day, I was remanded to state custody for having violated the terms of my state parole.

5. At some point after I was transferred to state custody, I recall appearing before an administrative law judge on whether I had violated my parole. During this hearing, there was an agreement reached that the determination of whether I had violated my parole would be postponed until after I went to trial on the federal weapons charges. The judge told me that if I was not convicted on the federal charges, I would not be sentenced for having violated my parole.

6. In June 2000, I went to trial before Judge Loretta Preska on the federal weapons charges brought against me. I was found guilty by the jury, and Judge Preska sentenced me to 210 months.

7. Shortly after my sentence, I was transferred back to state custody at Rikers, were I was incarcerated awaiting my parole revocation hearing.

8. On April 16, 2001, while I was still waiting for a parole revocation hearing at Rikers, I was told I was going to be transferred to a dormitory unit. When I objected to this transfer, Corrections Officers Sakellardis, Reyes, and Merced restrained me, and Officer Merced pushed me and banged my head against the wall while I was fully restrained.

9. Soon after that, Officer Merced brought criminal assault charges against me falsely alleging that I had kicked him on April 16. A criminal complaint was filed against me in state court.

10. After being in jail at Rikers for over six months, on June 1, 2001, I was brought to a hearing before Administrative Law Judge Luis Meringolo on six parole

violation counts. At the hearing, I was represented by an attorney named Kenneth Olsen, and the State of New York was represented by parole revocation specialist Joseph Lake.

11. Before the hearing actually started, Judge Meringolo, Mr. Lake, Mr. Olsen, and I discussed the terms of a plea agreement. In that pre-hearing conversation, we agreed that I would plead guilty to one of six parole violation counts and that Mr. Lake would recommend that I serve the maximum time on my parole violation in federal custody concurrent with my federal sentence.

12. Mr. Olsen explained to me at that time that even though I was agreeing to the maximum sentence on my parole violation, the State agreed in exchange to recommend that I serve my parole violation sentence in federal custody concurrent with the 210-month sentence imposed by Judge Preska.

13. Mr. Olsen's and Mr. Lake's statements to Judge Meringolo during the hearing confirmed my understanding of the plea agreement we had reached. As I expected, and as we had all agreed, I was sentenced to serve the time for violating my parole in federal custody at the same time I was serving my federal sentence.

14. According to the terms of my plea agreement, I did not have to serve my state sentence before I could begin serving my federal sentence. Judge Meringolo accepted and imposed this agreement.

15. Following the parole revocation hearing, I was not transferred to federal custody, as I had expected and as we had all agreed. Instead, I remained at Rikers Island for an additional thirteen months.

3

16. On June 28, 2002, the state assault charges brought against me by Defendant Merced were dropped, without explanation.

17. Just over two weeks later, on July 15, 2002, I was transferred to federal custody.

18. During the period of June 2001 to June 2002, I understood that I remained in state custody because of Corrections Officer Merced's pending assault charges against me. During that time, I was <u>never</u> told that I was in state custody because there was a legal requirement that I serve my parole violation time there. In June 2001, we had agreed and I understood that I could and would serve my parole violation time in federal custody concurrent with my federal sentence. That was our agreement and that was the basis of my guilty plea to the parole violation.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: New York, New York
January 4, 2008

*Jamel Allen*
Jamel Abdula Allen