Docket No. 02 Civ. 4373 (RJH)(DF)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JAMEL "ABDULA" ALLEN,

Plaintiff,

-against-

CAPT. SAKELLARDIS, C.O. CRESPO, and C.O. MERCED,

Defendants.

**SUPPLEMENTAL REPLY MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION FOR REVISION OF THIS COURT'S MEMORANDUM AND ORDER DENYING DEFENDANT MERCED SUMMARY JUDGMENT ON PLAINTIFF'S MALICIOUS PROSECUTION CLAIM**

*MICHAEL A. CARDOZO*
*Corporation Counsel of the City of New York*
 *Attorney for Defendants Capt. Sakellardis,*
 *C.O. Crespo, and C.O. Merced*
 *100 Church Street, Rm. 3-218*
 *New York, N.Y. 10007*
 *Tel: (212) 788-0775*

*Of Counsel:   Elizabeth M. Daitz*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------x

JAMEL "ABDULA" ALLEN,

                               Plaintiff,                02 Civ. 4373 (RJH) (DF)

                         -against-

CAPT. SAKELLARDIS, C.O. CRESPO, and C.O.
MERCED,

                              Defendants.

-----------------------------------------------------------------------x

**SUPPLEMENTAL REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANT'S MOTION FOR REVISION OF THIS COURT'S MEMORANDUM AND ORDER DENYING DEFENDANT MERCED SUMMARY JUDGMENT ON PLAINTIFF'S MALICIOUS PROSECUTION CLAIM**

## PRELIMINARY STATEMENT

Defendants respectfully submit their Supplemental Reply Memorandum of Law in further support of their motion for revision of this Court's Memorandum and Order denying defendant Merced summary judgment on plaintiff's malicious prosecution claim. Defendants submit that the controlling law set forth in their October 3, 2007 and November 7, 2007 Memoranda of Law and herein, the facts set forth in the affidavits annexed thereto and hereto, and the admissions contained in plaintiff's October 23, 2007 and January 7, 2008 Memoranda in Opposition render plaintiff's malicious prosecution claim untenable. Plaintiff's Supplemental Memorandum of Law fails to create any issue of material fact for trial because the State of New York did not relinquish, or offer to relinquish, primary custodial jurisdiction over plaintiff at plaintiff's parole revocation hearing. Accordingly, defendants respectfully request that this Court dismiss plaintiff's malicious prosecution claim against defendant Merced, as plaintiff

suffered no deprivation of liberty as a result of the assault charge stemming from plaintiff's April 16, 2001 arrest.

## ARGUMENT

### POINT I: NEW YORK STATE DID NOT WAIVE ITS PRIMARY CUSTODIAL JURISDICTION OVER PLAINTIFF

Plaintiff concedes that New York State had primary custodial jurisdiction over him after his April 27, 1999 arrest on a weapons charge. (Pl.'s Supp. Memo in Opp., p. 3) Plaintiff also concedes that absent the explicit relinquishment of that jurisdiction, plaintiff would serve his state parole violator sentence in state custody *prior* to serving his consecutive federal sentence. (Pl.'s Supp. Memo In Opp., p. 7) However, notwithstanding the indisputable evidence that the state's primary custodial jurisdiction was only relinquished via conditional release on plaintiff's statutorily calculated conditional release date, plaintiff now argues that the State of New York actually intended for primary custodial jurisdiction to be relinquished via plea bargain at plaintiff's parole revocation hearing. Specifically, plaintiff argues that the State relinquished primary custodial jurisdiction as an explicit, negotiated term of plaintiff's agreement to plead guilty to one count of violating his parole. (Pl.'s Supp. Memo. in Opp., p. 8) Thus, plaintiff argues that, absent the April 16, 2001 assault charge, he would have been immediately released into federal custody following the revocation hearing. This argument is without merit.

Plaintiff's argument fails to create any issue of material fact for trial because (a) a relinquishment of primary custodial jurisdiction via plea bargain necessitates, at the least, the express consent of both prosecuting sovereigns; (b) plaintiff did not bargain for concurrent sentences to be served in federal custody; and (c) Parole Revocation Specialist Joseph Lake did

2

not agree to waive the state's primary custodial jurisdiction in consideration for plaintiff Allen's guilty plea.

a. **A Relinquishment of Primary Custodial Jurisdiction Via Plea Bargain Necessitates, at the Least, the Express Consent of Both Prosecuting Sovereigns**

A state's waiver of primary custodial jurisdiction may, in limited circumstances, be incorporated into a plea agreement. Plaintiff relies on Shumate v. United States, 893 F. Supp. 137, 139 (N.D.N.Y. 1995), for the proposition that a criminal defendant may bargain with the prosecuting sovereigns for the opportunity to serve his sentences in the custody of the sovereign of his choice. (Pl.'s Supp. Memo. in Opp., at pp. 8-10) In Shumate, plaintiff was subject to related federal and New York State criminal charges. While those charges were pending, plaintiff, the United States Attorney, and the County District Attorney entered into intensive, coordinated plea negotiations. Shumate, 893 F. Supp. at 139. Those negotiations yielded an agreement among all parties that plaintiff would enter guilty pleas on the federal and state felony charges, and in return, he would be permitted to serve those sentences concurrently in federal custody. Id. This scheme was presented to, and expressly approved by, both the Schenectady County Court and the Northern District of New York. Id.

In addition to the expressly bargained-for term of plaintiff's plea agreement with cooperating sovereigns, and the dual judicial approval of the agreement, the District Attorney also executed a written "Waiver of Primary Jurisdiction" directed to the Assistant United States Attorney prior to plaintiff's federal sentencing. Id. at 139-140. Thus, the District Court later noted that the written "waiver fully and unconditionally yields New York State's primacy of jurisdiction to the United States." Id. at 140. Nonetheless, the Federal Bureau of Prisons ("BOP") refused to take custody of the plaintiff from New York State Department of

3

Correctional Services ("DOCS"), rejecting the State's attempt to waive primary jurisdiction. The Shumate Court ultimately held that the custody and service of plaintiff's sentences were properly negotiated between the prosecuting sovereigns and coordinated between the sentencing courts, and that New York State, the sovereign with priority of jurisdiction, had expressly relinquished custodial jurisdiction to the federal government. Id. at 141; see also United States v. McCrary, 220 F.3d 868, 870 (8th Cir. 2000)(the exercise of jurisdiction over an inmate is solely a question to be determined between the two prosecuting sovereignties, and is not subject to attack by the inmate). Only then did the Court direct BOP to assume custody of the plaintiff.

Here, the federal government – a necessary prosecuting sovereign – was not party to the purported plea negotiations (which were only recently recalled by plaintiff),[1] nor was the BOP ever informed of the State's supposed agreement to waive primacy of jurisdiction. There is no evidence that any representative of the State of New York executed the requisite written "Waiver of Primary Jurisdiction" form. Furthermore, there is no evidence that either the federal sentencing court, the United States Attorney, or the BOP was ever informed, at any time, of the state's alleged agreement to waive primacy of jurisdiction via plea bargain at plaintiff's parole revocation hearing. Thus, no court or jury could find on this record that the purported

---

[1] Although plaintiff's affirmation sets forth his own purported recollection of the pre-hearing, off-the-record discussions between his attorney, the Administrative Law Judge ("ALJ"), and the Parole Revocation Specialist, there is no transcript of this proceeding. Notably, throughout the entirety of this litigation, plaintiff never once asserted that his defense attorney bargained for concurrent sentences to be served in federal custody in exchange for his guilty plea at his parole revocation hearing. Nor did he assert that the Parole Revocation Specialist agreed to this sentencing scheme. Notwithstanding his previously *pro se* status, plaintiff has demonstrated a thorough understanding of criminal procedure, as well as an understanding of the sentencing issues at the heart of defendants' motion. Accordingly, in determining whether plaintiff's affirmation, by itself, is sufficient to create any issue of material fact for trial, the Court should seriously question the credibility of plaintiff's testimony as it relates to his own purported recollection of the content of the discussions held prior to his June 1, 2001 parole violation hearing.

4

plea agreement was properly negotiated between the prosecuting sovereigns and coordinated between the sentencing courts, circumstances that the Shumate Court found necessary to conclude that New York State had expressly relinquished custodial jurisdiction to the federal government via plea bargain. Thus, plaintiff's argument that the State waived primary custodial jurisdiction, but he remained in state custody anyway because of the pending assault charge, is simply unsupported by any evidence. Rather, the State only waived primary custodial jurisdiction on plaintiff's conditional release date, calculated pursuant to New York State Corrections Law as set forth in defendants' opening brief.

**b.     Plaintiff Did Not Bargain for Concurrent Sentences to be Served in Federal Custody**

Here, there is no dispute that plaintiff was arrested on April 27, 1999 for weapons possession, and that both his federal charges and the violation of his parole stemmed from this incident. (Exhibit E to the Jan. 22, 2008 Supplemental Daitz Declaration, Affidavit of Joseph Lake, hereinafter "Exhibit E, Lake," at ¶¶ 13, 14) In Shumate, the criminal defendant offered his dual guilty pleas to similar charges as consideration for the state *and* federal governments' agreement to allow plaintiff to serve concurrent sentences in federal custody. Here, however, because plaintiff had already been convicted of and sentenced on the federal weapons charges, it had already been established as a matter of law that plaintiff committed the offense – weapons possession – that he plead guilty to at his parole violation hearing. Therefore, plaintiff could not offer a guilty plea as "consideration" to bargain for the state's purported relinquishment of primary custodial jurisdiction, as plaintiff now argues.[2] It is axiomatic that plaintiff's federal

---

[2] The Eighth Circuit addressed a similar issue in United States v. McCrary, 220 F.3d 868 (8th Cir. 2000). There, the Court pointed out that the criminal defendant's place of incarceration was not a bargained for term of his plea agreement because the criminal defendant had already plead guilty to the federal charge when the question of where he would be incarcerated arose. Id. at 870-71. Similarly, plaintiff here had been found guilty of the federal charge prior to the

conviction on the same charge rendered his parole revocation hearing a mere formality. Thus, plaintiff's counsel, Mr. Olsen, agreed to accept the "hold to max" in light of the previously imposed federal sentence. (Pl.'s Supp. Memo in Opp., p. 10)

### c. Parole Revocation Specialist Joseph Lake Did Not Offer To, or Agree To, Waive New York State's Primary Custodial Jurisdiction Over Jamel Allen

Plaintiff concedes that primary custodial jurisdiction cannot be relinquished under a theory of implied waiver. See United States v. Gonzalez, S-1 94 Cr. 313 (CSH), 1998 U.S. Dist. LEXIS 15300, *6-7 (S.D.N.Y. Sept. 30, 1998)(a state cannot implicitly waive primary custodial jurisdiction; the waiver must be stated explicitly, representing an express and informed decision on the part of the state). However, plaintiff asserts that because Parole Revocation Specialist Joseph Lake was allegedly unable to be located, the Court should credit plaintiff's testimony regarding Mr. Lake's actions and intentions during the off-the-record portions of plaintiff's parole violation hearing.[3]

Plaintiff's representation that he "endeavored, without success" to contact Joseph Lake is, at best, disingenuous. (Pl.'s Supp. Memo in Opp. at p. 9, fn3) Joseph Lake is still employed by the New York State Division of Parole ("DOP"), and is presently a Deputy Chief in the Parole Violations Unit. (Exhibit E, Lake, at ¶ 1) Defense counsel promptly located Mr. Lake simply by calling the main office of the New York State Division of Parole and inquiring as to whether Mr. Lake was still employed there. (Jan. 22, 2008 Supp. Daitz Decl., at ¶¶ 4-6)

---

discussion of plaintiff's place of incarceration that allegedly took place at his parole revocation hearing. Accordingly, this Court should also find that plaintiff's place of incarceration was not a bargained for term of his plea agreement.

[3] In the alternative, plaintiff requests an additional opportunity to present facts to support plaintiff's theory of an express waiver of jurisdiction by the State. (Pl.'s Supp. Memo in Opp. at pp. 9-10, fn4) The evidence set forth by defendants, however, renders that request moot.

Accordingly, Mr. Lake attested to the facts set forth herein, which confirm that the State of New York did not waive primary custodial jurisdiction over plaintiff at his parole revocation hearing.

At the time of Mr. Lake's appearance at plaintiff's parole revocation hearing, DOP was aware that plaintiff had been convicted of the federal weapons charge stemming from his April 27, 1999 arrest for possession of an AK-47 rifle. (Exhibit E, Lake, at ¶ 13) At that hearing, plaintiff was charged with violating rule nine of the rules governing parole, also stemming from his possession of an AK-47 rifle on April 27, 1999. (Exhibit E, Lake, at ¶ 14) Accordingly, there was virtually no question as to whether plaintiff's parole would be revoked by the ALJ presiding over the revocation hearing, because it had previously been established as a matter of law that plaintiff committed the offense that was the subject of the parole violation charge.

As a result of the federal weapons conviction, all parties to the hearing (DOP, plaintiff's counsel and the ALJ) agreed that plaintiff Allen would plead guilty to a violation of rule nine of the rules governing parole.[4] (Exhibit E, Lake, at ¶ 16) A guilty plea to a violation of rule nine of the rules governing parole would result in a hold to the maximum expiration of the offender's sentence. (Exhibit E, Lake, at ¶ 15) Accordingly, as a result of plaintiff's guilty plea to a charge that would already result in a hold to the maximum expiration of the sentence, DOP agreed to withdraw the remaining charges with prejudice. (Exhibit E, Lake, at ¶ 17) Consequently, all parties agreed that the ALJ would impose a hold of the maximum expiration of the previously imposed three to six year sentence. (Exhibit E, Lake, at ¶ 18)

---

[4] Even if it were arguable that the ALJ believed he was sentencing plaintiff pursuant to a plea agreement whereby the state would waive primacy of jurisdiction, the imposition of that sentence still did not constitute a waiver of the state's primary custodial jurisdiction. As stated by the Gonzalez Court, "[j]udges are members of the judicial branch of government and are therefore not empowered to waive primary jurisdiction over a defendant." United States v. Gonzalez, S-1 94 Cr. 313 (CSH), 1998 U.S. Dist. LEXIS 15300, *6-7 (S.D.N.Y. Sept. 30, 1998)

On June 1, 2001, it was Mr. Lake's understanding that, as a result of the revocation of plaintiff's parole, plaintiff would serve the remainder of his state sentence in state custody up until the time the state relinquished custodial jurisdiction over him. (Exhibit E, Lake, at ¶ 19) Contrary to plaintiff's theory that Mr. Lake agreed to waive New York State's primacy of jurisdiction over plaintiff (such that his sentences would run concurrently in federal custody) in exchange for plaintiff's guilty plea, Parole Revocation Specialists for the New York State Division of Parole do not have the authority to offer to waive, or to waive, New York State's primary custodial jurisdiction over any inmate in exchange for a guilty plea on any parole violation charge. (Exhibit E, Lake, at ¶ 21) Also, contrary to plaintiff's theory, Parole Revocation Specialists do not have the authority to offer any inmate concurrent federal and state sentences in exchange for a guilty plea on any parole violation charge. (Exhibit E, Lake, at ¶ 23) Additionally, Parole Revocation Specialists do not have the authority to offer any inmate incarceration in a jurisdiction other than the State of New York in exchange for a guilty plea on any parole violation charge. (Exhibit E, Lake, at ¶ 25)

Specifically with respect to plaintiff Allen, Mr. Lake has affirmed that he did not, as plaintiff alleges, negotiate a plea agreement whereby he offered on behalf of the State of New York to waive primary custodial jurisdiction over plaintiff Allen, nor did he offer plaintiff concurrent federal and state sentences in exchange for his guilty plea. (Exhibit E, Lake, at ¶¶ 22, 24) Furthermore, Mr. Lake did not offer plaintiff incarceration in federal custody in exchange for his guilty plea. (Exhibit E, Lake, at ¶ 26) Contrary to plaintiff's inaccurate assumptions, at no time did Mr. Lake have the intent, understanding or belief that plaintiff Allen would serve the maximum time remaining on his state sentence in federal custody concurrent with his federal sentence. (Exhibit E, Lake, at ¶ 20) Thus, there was no explicit and informed decision on the

8

part of the State, through DOP, to waive its primacy of jurisdiction, purportedly permitting plaintiff to serve concurrent sentences in federal custody.

Accordingly, as a matter of law, this Court should find that the State of New York did not explicitly waive primary custodial jurisdiction over plaintiff at his June 1, 2001 parole revocation hearing. This case simply does not fit within the narrow plea bargain exception to the general rule that when the State has priority of jurisdiction, the inmate must remain in the custody of the State until the state sentence has been served. Consequently, plaintiff remained in state custody until his statutorily calculated conditional release date, at which time he was transferred to federal custody for service of his consecutive 210-month federal sentence. There is absolutely no credible evidence that plaintiff's April 16, 2001 arrest at Rikers Island had any bearing on the calculation of his consecutive state and federal sentences.

### POINT II: § 1983 IS NOT THE APPROPRIATE REMEDY FOR PLAINTIFF'S ALLEGED INJURY

Courts in this district have held that even if a state court orders concurrent sentences served in federal custody, it is still within the discretion of BOP to independently determine both the place of confinement and whether to run dual sentences consecutively or concurrently. See United States v. Almonte-Batista, 05 CR 432 (NRB), 2006 U.S. Dist. LEXIS 93597, at *1-2 (S.D.N.Y. Dec. 27, 2006)(even where a state court judge orders concurrent sentences served in federal custody, it remains for BOP to determine the inmate's place of confinement). Plaintiff concedes that this principle is applicable here. (Pl.'s Supp. Memo in Opp., p. 13) Plaintiff also acknowledges that there are administrative remedies specifically designed to address his complaint with respect to BOP's independent determination that his state and federal sentences would run consecutively. (Pl.'s Supp. Memo in Opp., p. 12) Plaintiff

further concedes that an inmate must first exhaust these administrative remedies, available under BOP regulations, before seeking relief in a district court. (Pl.'s Supp. Memo in Opp., p. 12, fn6)

Plaintiff's lamentation about the "uncertain path" to having his sentence recalculated is unpersuasive. The general principle that administrative remedies must be exhausted before pursuing a § 1983 claim would be rendered meaningless if that principle only applied to administrative remedies with guaranteed outcomes. Because plaintiff remains incarcerated, and because the available administrative remedy could conceivably remedy plaintiff's alleged deprivation of liberty, plaintiff must not be permitted to pursue compensatory damages in this action.

## CONCLUSION

In sum, there is no evidence that plaintiff's state and/or federal sentences were in any way affected by his April 16, 2001 arrest. As such, there is no evidence that plaintiff suffered a deprivation of liberty as a result of the events giving rise to this lawsuit. Moreover, to the extent plaintiff has any claim for the time he spent in state custody, there is an administrative remedy that plaintiff is required as a matter of law to exhaust prior to seeking money damages.

For the foregoing reasons and the reasons set forth in defendants' October 3, 2007 and November 7, 2007 Memoranda of Law, this Court's March 28, 2007 Memorandum and

Order should be revised, granting defendant Merced summary judgment on plaintiff's malicious prosecution claim.

Dated: January 18, 2008
       New York, New York

                                            MICHAEL A. CARDOZO
                                            Corporation Counsel of the
                                            City of New York
                                            Attorney for Defendants Sakellaridis,
                                            Merced and Crespo
                                            100 Church Street, Room 3-218
                                            New York, New York 10007
                                            (212) 788-0775

                                            By: _____
                                            Elizabeth M. Daitz
                                            Assistant Corporation Counsel


To:    Jeh Charles Johnson, Esq
        Koren L. Bell, Esq
        Paul, Weiss, Rifkind, Wharton & Garrison LLP
        1285 Avenue of the Americas
        New York, NY 10018-6064