**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

JAMEL ALLEN,

Plaintiff,

v.

CAPT. SAKELLARDIS, C.O. CRESPO, AND
C.O. MERCED,

Defendants.

02  Civ. 4373 (RJH) (DCF)

**DECLARATION OF**
**KOREN L. BELL**

KOREN L. BELL declares, pursuant to 28 U.S.C. § 1746, as follows:

1.      I am an attorney at Paul, Weiss, Rifkind, Wharton & Garrison LLP ("Paul, Weiss"), counsel for Plaintiff Jamel Allen in the above-captioned action.  I submit this Declaration in support of Mr. Allen's opposition to defendants' motion, pursuant to Rule 54(b) of the Federal Rules of Civil Procedure, for revision of this Court's March 28, 2007 decision denying Defendant Merced summary judgment on Mr. Allen's malicious prosecution claim.

2.      Attached hereto as Exhibit A is the Declaration of Kenneth P. Olsen.

3.      Attached hereto as Exhibit B is a true and correct copy of the transcript of the June 1, 2001 parole revocation hearing.

4.      Attached hereto as Exhibit C is a true and correct copy of the June 1, 2001 parole revocation decision notice.

Dated: New York, New York
       March 13, 2008

_____
Koren L. Bell

EXHIBIT A

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

JAMEL ALLEN,

                              Plaintiff,

                    v.

CAPT. SAKELLARDIS, C.O. CRESPO, AND
C.O. MERCED,

                              Defendants.

02  Civ. 4373 (RJH) (DCF)

**DECLARATION OF**
**KENNETH P. OLSEN**

KENNETH P. OLSEN declares, pursuant to 28 U.S.C. § 1746, as follows:

1.     I am the attorney that represented Plaintiff Jamel Allen at the parole revocation hearing on June 1, 2001 before Judge Luis Meringolo.  I submit this Declaration in further support of Mr. Allen's Supplemental Opposition to Defendants' Motion for Revision of this Court's Memorandum and Order Denying Defendant Summary Judgment on Plaintiff's Malicious Prosecution Claim.

2.     From 1973-2001, I was an Attorney in New York State, and a member of the New York State Bar Association, specializing in criminal law. In particular, from 1973-1977, I was an Assistant District Attorney in the Bronx, New York. From 1988-2001, I specialized in representing parolees before the New York State Division of Parole.  In 2001,  I retired from the practice of law and moved to Naples, Florida.

3.     Over the course of my legal career, I represented parolees in thousands of hearings before the New York State Division of Parole.  As a result, I am familiar with all aspects of the parole revocation process.  In particular, I am familiar with the mechanics of parole revocation sentencing.

4.    Based on my experience, I understand how the mechanics of parole revocation sentencing apply to a parolee like Mr. Allen, who has been convicted and sentenced in federal court, remanded on a charge of New York State parole violation arising from the federal conviction, and sentenced to a revocation of parole on the basis of the federal conviction. I know that, as a matter of practice, this parolee will serve his state revocation sentence together with his federal sentence in federal custody. This "de facto concurrent sentence scheme," as I will refer to it here, is a commonly-accepted procedure that saves the State of New York a great deal of money in correctional costs.

5.    In the course of my career, I represented numerous parolees who were sentenced to a revocation of parole after being sentenced to federal time for a crime that gave rise to the New York State parole violation.   It is my understanding that, in fact, these parolees were typically released to federal custody following their parole revocation hearings in order to serve their state parole revocation sentences concurrently with their federal sentences in federal custody.

6.    Jamel Allen was one of the parolees that I represented following federal sentencing for a crime that gave rise to a charge of New York State parole violation.  I remember Mr. Allen, and I have refreshed my memory of his case by reviewing the transcript of the June 1, 2001 parole revocation hearing before Judge Luis Meringolo (Exhibit B to the attached Declaration of Koren Bell ("Bell Decl.")), and the June 1, 2001 Parole Revocation Decision Notice signed by Judge Meringolo and the Commissioner of the New York State Division of Parole (Exhibit C to the attached Bell Decl.).

7.      Based on my review of these materials, it is clear to me that Judge Meringolo, my client, Mr. Allen, and I were all operating under the assumption that Mr. Allen's "hold-to-max" parole revocation sentence would be served together with his seventeen-year federal sentence in federal custody, as was customary in this situation. Specifically, although I was aware of the Bronx assault case that was pending against Mr. Allen at the time of the parole revocation hearing (the case had been filed the previous month, in May 2001), I believed this to be a "misdemeanor case," as I stated to the Judge at the time (Bell Decl., Exh. B, at 9). Based on my experience, and the underlying facts of the Bronx case (Mr. Allen allegedly having kicked Corrections Officer Merced in the lower leg), I assumed that the pending "misdemeanor case" would either be promptly dismissed or that any resulting sentence would have merged with Mr. Allen's remaining State time, as a matter of New York State law. Therefore, at the time of the hearing, I believed that this new "misdemeanor case" would not alter the de facto concurrent sentence scheme as it applied to Mr. Allen.

8.      Based on my review of the transcript, I see that I negotiated a plea agreement for Mr. Allen with Parole Revocation Specialist Joseph Lake in advance of the hearing. Pursuant to this plea agreement, Mr. Allen pled guilty to one of the six parole violation charges brought against him, and the other charges were dismissed. We agreed, nevertheless, that Mr. Allen would be sentenced to the maximum time remaining on his state sentence. I would have advised Mr. Allen to accept such a plea <u>only</u> because of the knowledge that, in practice, the maximum time remaining on his state sentence would run together with his (much longer) federal sentence in federal custody, in accordance with the de facto concurrent sentence scheme that applied in this type of case. The transcript

3

reflects this rationale. *See* Bell Decl., Exh. B, at 6 ("Judge, we're accepting this finding with the recommendation of a hold to max mainly <u>because</u> my client is in serving a new seventeen year federal sentence and he will be maxing out while he's in federal custody. So <u>that's</u> <u>why</u> we are going with the hold-to-max in this case.") (emphasis added).

9.    At the time of the hearing, Parole Revocation Specialist Lake appears to have shared my understanding that Mr. Allen would serve his parole revocation sentence together with his federal sentence. *See* Bell Decl., Exh. B, at 6 ("Your Honor, I agree with what Mr. Olsen has says [sic], I have nothing further to add.").

10.    It is clear to me that Judge Meringolo, too, operated under the assumption that Mr. Allen's parole revocation sentence would be served concurrently with his federal sentence in federal custody.  At the parole revocation hearing, Judge Meringolo ruled that Mr. Allen was "going to complete his parole <u>while</u> <u>in</u> <u>federal</u> <u>custody</u>" (Bell Decl., Exh. B, at 7) (emphasis added).

11.    Further, in the "Analysis and Decision" section of the Parole Revocation Decision Notice, which was signed by Judge Meringolo and the Commissioner of the New York State Division of Parole, Judge Meringolo wrote: "Parolee will max out in federal custody.  <u>Therefore</u>, hold to max is warranted" (Bell Decl., Exh. C, at 4) (emphasis added).  In other words, Judge Meringolo believed that Mr. Lake's and my joint recommendation that Mr. Allen be sentenced for the maximum time remaining on his state sentence was "warranted," at least in part, <u>because</u> Mr. Allen would serve this sentence together with his federal sentence in federal custody.

12.    Based on the foregoing, I believe that, had it not been for the new Bronx assault case against Mr. Allen that was pending at the time of the June 1, 2001 parole revocation hearing – and that remained pending for nearly thirteen months, until it was dismissed on June 28, 2002 – Mr. Allen would have been released to federal custody following the June 1, 2001 hearing in order to begin serving his parole revocation sentence concurrently with his seventeen-year federal sentence in federal custody, as was customary in this type of case.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: Naples, Florida
       February 26, 2008

Kenneth P. Olsen

EXHIBIT B

THE STATE OF NEW YORK
DIVISION OF PAROLE

------------------------------x

In the Matter of the Parole      :
Revocation Hearing of                        NYSID No. 6146663R
                                 :
     JAMEL ALLEN                             Violation Control
                                 :           No. 226086
                    Parolee.
                                 :

------------------------------x

                           Held on:  June 1, 2001
                           At:       Rikers


B E F O R E :

          ADMINISTRATIVE LAW JUDGE LUIS MERINGOLO

A P P E A R A N C E S :

     JAMEL ALLEN, Parolee

     MR. JOSEPH LAKE
     PAROLE REVOCATION SPECIALIST
     Bronx Six

     MR. KENNETH OLSEN, ESQ.
     Attorney for the Parolee


                           Transcribed by:

                           Vicki Valente

2

1       THE COURT: All right.  We're on the record

2    now in the matter of Jamel Allen.  NYSID number 6146663R,

3    warrant 226086.  May I have your appearances for the

4    record.

5       MR. LAKE: Parole Revocation Specialist

6    Joseph Lake, Bronx Six.

7       MR. OLSEN: Kenneth Olsen, for Mr. Allen.

8    Say your name for the record, please.

9       MR. ALLEN: Jamel Allen.

10       THE COURT: All right.  My name is Luis

11    Meringolo.  I'm the Administrative Law Judge assigned to

12    this case today.  The purpose of this hearing is to

13    determine whether you violated the terms and conditions of

14    your release in an important respect.  If such is found to

15    be the case, I will either make an appropriate

16    recommendation to the Board or a final decision,

17    concerning what should be done with the unserved portion

18    of your underlying sentence.  Do you understand why you're

19    here today?

20       MR. ALLEN: Yes.

21       THE COURT: Both sides are ready to proceed?

22       MR. LAKE: Yes, Judge.

23       MR. OLSEN: Yes.

24       THE COURT: All right.  Please raise your

25    right hands.  Do you swear or affirm the testimony you

3

1   give today is the truth and nothing but the truth?

2                    MR. LAKE: Yes.

3                    THE COURT: Yes?

4                    MR. ALLEN: Yes.

5                    THE COURT: All right.  I have certain

6   documents that have to be put into the record.  Mr. Lake,

7   you're Manhattan what?

8                    MR. LAKE: Bronx Six, Your Honor.

9                    THE COURT: Bronx Six, I'm sorry.  All

10  right.  I need -- he wasn't a Shock or anything like

11  that, or anything?

12                   MR. LAKE: No, Your Honor.

13                   THE COURT: Okay.  I have certain documents

14  that have to be placed into the record.  They are and

15  include number one, a Violation of Release Report

16  containing six charges. Six charges, is that correct?

17                   MR. LAKE: Yes, Your Honor.

18                   THE COURT: All right.  Notice of Violation,

19  a case summary and a Certificate of Release to Parole

20  Supervision which indicates that you were paroled on a

21  criminal possession of a controlled substance charge.  Has

22  your client received a copy of these documents in a timely

23  fashion?

24                   MR. OLSEN: Yes, Judge.

25                   THE COURT: Any question of notice in this

4

1    case?

2                MR. OLSEN: No, Judge.

3                THE COURT: All right.  Mr. Lake, did you

4    review the documents read into the record?

5                MR. LAKE: Yes, Your Honor.

6                THE COURT: Were they prepared in the

7    ordinary course of business of the Division of Parole?

8                MR. LAKE: Yes.

9                THE COURT: And do you attest to the truth

10   and accuracy of the contents of the documents to the best

11   of your knowledge and ability?

12               MR. LAKE: Yes, I do.

13               THE COURT: All right.  I'm going to mark

14   this into evidence as State's Exhibit One.

15               (Whereupon, these documents were marked

16   into evidence as State's Exhibit One)

17               THE COURT: And I note, sir, that this is

18   the accusatory instrument in this case and it charges you

19   for violating the terms and conditions of your release in

20   an important respect.  Counsel, have you advised your

21   client of his rights at this hearing?

22               MR. OLSEN: Yes.

23               THE COURT: The record should reflect there

24   was a pre-hearing conference and a plea bargain was agreed

25   to.  The parolee has agreed to plead guilty to charge

5

1  number three and in return, the Division has agreed to

2  withdraw the remaining charges with prejudice.  I've

3  agreed that the parolee is a Category One, as a result of

4  a Federal gun conviction and I'm going to impose a hold of

5  the maximum expiration of the sentence.  Is that

6  everyone's understanding of this plea arrangement?

7              MR. LAKE: Yes.

8              MR. OLSEN: Yes, Judge.

9              THE COURT: Notwithstanding what I just

10  said, sir, there are four ways in which you can plead.

11  One, is guilty; two, not guilty; three, guilty with an

12  explanation; or four, you can stand mute.  In other words,

13  not say anything and in which case I would interpret that

14  as a not guilty plea.  I'll read the charge.  Charge

15  three, Jamel Allen violated rule nine of the rules

16  governing parole in that on or - - on or about 4-27-1999,

17  at approximately 5:05 p.m., at 3485 Balonia (phonetic)

18  Street, Number 17F, Bronx, New York, he was in possession

19  of an AK-47 rifle.  How does your client plead to that?

20              MR. OLSEN: Guilty, as a violation of parole

21  in an important respect.

22              THE COURT: Okay.  Now, based upon the

23  parolee's plea which you just heard, Mr. Lake, does the

24  Division withdraw the remaining charges with prejudice?

25              MR. LAKE: Yes, Your Honor.

6

1    THE COURT: Based upon the parolee's plea,

2    the violation is sustained.  I find it to be a violation

3    in an important respect.  The delinquency date is 4-27-

4    1999 is sustained.   Recommendations?

5    MR. OLSEN: Judge, we're accepting this

6    finding with the recommendation of a hold to max mainly

7    because my client is in serving a new seventeen year

8    Federal sentence and he will be maxing out while he's in

9    Federal custody.  So, that's why we're going with the hold

10   to max in this case.

11   THE COURT: Mr. Lake, do you want to add

12   something to this?

13   MR. LAKE: No, Your Honor, basically, what

14   Mr. Olsen said is correct.  In 1990, he did have a

15   robbery, first degree for which he was sentenced to a one-

16   three year sentence, and that's what made him a Category

17   One.

18   THE COURT: Right.

19   MR. LAKE: Your Honor, I agree with what Mr.

20   Olsen has says, I have nothing further to add.

21   THE COURT: All right.  Mr. Allen is serving

22   a sentence of three to six, three years and six years for

23   attempted criminal possession of a controlled substance in

24   the third degree.  He is a Category One as a result of a

25   robbery, robbery one in his history.  He has a new arrest

7

1   pending in the Bronx, that case is pending.  He was

2   sentenced to seventeen years in Federal prison which is

3   approximately 214 months.  It's his first violation.  He's

4   going to complete his parole while in Federal custody.

5   It's a joint recommendation, he plead guilty to charge

6   number three and I'm going to hold him to the maximum

7   expiration of his sentence. If there's nothing further - -

8               MR. LAKE: Your Honor, I thought you said

9   that he had a pending case in the Bronx?

10              THE COURT: That's what it says on the

11  sheets here.

12              MR. LAKE: Judge, but that was back in 1999.

13  That is the same case for which he's been found Federally

14  guilty.  So, therefore, that case is closed at the time  -

15  - he has - -

16              MR. OLSEN: No, he also has - -

17              MR. LAKE:  - - a new arrest for assault for

18  which he got - - when but he got returned here.

19              MR. OLSEN: Right.

20              MR. LAKE: In 2001, but that's not in his

21  notes.  His notes, he's talking about the 1999 pending

22  case which was turned over to the Feds, Your Honor.

23              MR. OLSEN: Yeah, that's what he was found

24  guilty of in Federal court.

25              THE COURT: All right.  So, he has no

8

1    Federal case - - no Bronx case anymore.

2             MR. LAKE: He does have a Bronx case.

3             MR. OLSEN: He does have a Bronx case.

4             MR. LAKE: But it's a 2001 arrest.

5             THE COURT: Oh, all right.

6             MR. LAKE: Not the 1999 arrest.

7             THE COURT: I didn't say 1999 arrest.

8             MR. LAKE: But how would you know about the

9    2001 when he just got it last month, Judge?

10             THE COURT: I just read it off the Notice of

11   Violation.  I assumed this was done recently.

12             MR. LAKE: Right, but the note deals with

13   1999.

14             THE COURT: All right, but there is an

15   arrest in 2001.

16             MR. LAKE: In 2001.

17             MR. OLSEN: Right.

18             MR. LAKE: Just last month, it's an assault

19   case that's pending.

20             THE COURT: While he was in prison this

21   happened?

22             MR. LAKE: While he was returned back to

23   Riker's Island, yes.

24             MR. OLSEN: Any arrest that takes place in

25   Riker's Island, are Bronx's jurisdiction.

9

1                THE COURT: So, it was in Riker's Island.

2                MR. OLSEN: It's a misdemeanor case in the

3  Bronx.

4                THE COURT: That the assault occurred.

5                MR. OLSEN: Correct.

6                THE COURT: All right.  I'm holding you to

7  max.  If there's nothing further, we can go off the

8  record.

9                MR. OLSEN: Thank you, Your Honor.

10               MR. LAKE: Thank you.

11

12               The foregoing is a correct and
                    true transcript of the hearing
13               in the within matter.

14

15               _Vicki Valente_
                    Vicki Valente

16

17

18

19

20

21

22

23

24

25

EXHIBIT C

New York State Division of Parole
**PAROLE REVOCATION DECISION NOTICE**

2419909809

ADDENDUM

REASONS FOR RECOMMENDATION
OF DELINQUENT TIME ASSESSMENT WHICH REQUIRES BOARD ACTION

V

Name _____      Area Office _____

NYSID# _____      Hearing Location _____

Warrant # 776?_____      Hearing Date _____

DIN# 96 R ?_____

A ( ) Consists of the Use or Abuse of Alcohol or a Controlled Substance (Penal Law definition) - Category 1 (a)

B ( ) Crime of Conviction is a Penal Law Article 125 Offense - Category 1 (c)

C ( ) Crime of Conviction is a Penal Law Article 130 OR 263 Offense OR Section 255.25 of the Penal Law - Category 1 (d)

D (X) Current Sustained Violation involves the Use of or the Threatened Use of a Deadly Weapon or Dangerous Instrument or the Infliction or Attempted Infliction of Physical Injury Upon Another or the Possession of a Firearm, or Threats Toward Division of Parole Staff or Peace Officers - Category 1 (f)

E ( ) Failed to complete Willard DTC Program (GUIDELINES DO NOT APPLY)

F ( ) Sentenced Pursuant to Criminal Procedure Law Section 410.91 to a Sentence of Parole Supervision (GUIDELINES DO NOT APPLY)

G ( ) Revoke and Restore Recommendation

H ( ) Conditionally Paroled for Deportation Only (GUIDELINES DO NOT APPLY)

Recommendation: (X) Time Assessment  _____ME____ months.
( ) Revoke and Restore

REASONS: _____

_____

_____

_____

Date: _____

Signature _____

Name _____

Title ___Administrative Law Judge___

I (X) ALJ Recommendation Affirmed

J ( ) ALJ Recommendation Modified as Follows
1 ( ) Time Assessment _____
2 ( ) Hold _____ Months

Reasons for modification or statement of any special conditions that are imposed:

_____

_____

Date: _____      _____
                           Commissioner

Date: _____      _____
                           Commissioner

NOTICE: YOU HAVE THE RIGHT TO APPEAL THIS DECISION.

DISTRIBUTION:
White - AREA OFFICE/BUREAU, Green - ALERTS NUMBER/CENTRAL FILE, Yellow - ATTORNEY, Pink - INMATE/PAROLEE, Gold - Administrative LAW JUDGE/BUREAU CHIEF

WARRANT #: 226 036

C ( ) Category 3

Category 3 violators are defined as any violator within these guidelines and not included in Category 1 or Category 2.

( ) Crime of Conviction is a Violent Felony Offense as Defined in Penal Law Section 70.02 (Time spent in custody on the parole violation plus twelve months).

( ) Crime of Conviction is a Non-Violent Felony Offense (Time spent in custody on the parole violation plus three months).

Was release mandatory Wilard _____

_____ yes but exempted _____ no

D ( ) SHOCK RELEASE:  As defined in Regulation Section 8010.3)

E ( ) PERSISTENT VIOLATOR:

For those Violators Who Have A Persistent Violation of Parole Conditions or Their Release Upon the Controlling Conviction and Would Otherwise Be Subject to the Time Assessment Authorized Under 9 N.Y.C.R.R. 8005.20; (2) and (3), a Time Assessment Not to Exceed 12 Months Shall Be Imposed.

Release Date _____       ( ) Parole       ( ) Conditional Release

Delinquency Date of _____ sustained. Delinquency Date of _____ modified (d

Time Remaining on Undischarged Portion of Sentence as of the sustained delinquency date.

_____ 4 _____ Years      _____ 7 _____ Months      _____ 4 _____ Days

III FINDINGS AND CONCLUSIONS:

A ( ) No violations sustained. The nature of charges are discussed and delinquency is cancelled as explained below.

B ( ) Charges _____ 3  9 _____  ( )  ( )  ( )  are sustained based on the information contained in the Violation of Release Report and credible testimony of

_____        Exhibits _____

C ( ) Charges _____ 1  2  4  5  6  8 _____ withdrawn

D ( ) Charges not proven by a preponderance of legally sufficient evidence.

( )  ( )

E ( ) Charges ( )  ( )  ( )  ( ) not approved by the Board for prosecution.

NOTICE: Guidelines For Dispositions To Be Made After Parole Has Been Revoked At A Final Hearing Are Contained in Rule and Regulation 9 NYCRR-Subtitle CC-Part 8005.20. Effective October 28, 1997. Amended (c), (d).

New York State Division of Parole
**PAROLE REVOCATION DECISION NOTICE**

Name _Jerrold Allen_    Area Office _B x 6_

NYSID # _61 9266-9R_    Hearing Location _RIKE 1_

Warrant # _212638Pc._    Hearing Date _6/1/2001_

Attorney _Ken Olsen, Esq_    SHOCK RELEASE ____ Yes _X_ No

Contested: ____ Yes _X_ No

In Absentia: ____ Yes _X_ No

**I. ( ) BOARD ACTION REQUIRED:**

A ( ) Conditional Release Trend - crime of conviction is a violent felony (Penal Law definition) - Category 1 (a)

B ( ) Crime of Conviction is a Penal Law Article 125 Offense - Category 1 (c)

C ( ) Crime of Conviction is a Penal Law Article 130 OR 263 Offense OR Section 255.25 of the Penal Law - Category 1 (d)

D (X) Current Sustained Violation involves the Use of or the Threatened Use of a Deadly Weapon or Dangerous Instrument or the Infliction or Attempted Infliction of Physical Injury Upon Another or the Possession of a Firearm, or Threats Toward Division of Parole Staff or Peace Officers - Category 1 (f)

E ( ) Failed to complete Willard DTC Program (GUIDELINES DO NOT APPLY)

F ( ) Sentenced Pursuant to Criminal Procedure Law Section 410.91 to a Sentence of Parole Supervision (GUIDELINES DO NOT APPLY)

G ( ) Revoke and Restore Recommendation

( ) Voluntary Willard DTC on Consent

Shock Release ____ Yes ____ No

( ) Exceptional Mitigating Circumstances

( ) Absconder - Voluntary Surrender

( ) OTHER With No Pending Criminal Charge

( ) Voluntary Incarcerated Substance Abuse Treatment/SHOCK/ASAT program

( ) Shock Release (Other Than Mandatory Willard Cases)

H ( ) Conditionally Paroled for Deportation Only (GUIDELINES DO NOT APPLY)

**II. ( ) NO BOARD ACTION REQUIRED:**

A (X) Category 1 Case

( ) Crime of conviction is a Class A-I Felony Offense - Category 1 (b)

( ) Parole - and - Crime of Conviction is a Violent Felony Offense Involving the Use or Threatened Use of a Deadly Weapon or Dangerous Instrument or the Infliction of Physical Injury Upon Another:
- OR -
In Any Manner Released Upon a Youthful Offender Adjudication For Any Offense Identified Below* Involving the Use or Threatened Use of a Deadly Weapon or Dangerous Instrument or the Infliction of Physical Injury Upon Another - Category 1(e)

*Offenses: PL 70.02-VFO; Any Class A-I Felony Offense; PL 125; PL 130; PL 263; and PL 255.25.

(X) Criminal Record Includes VFO Convictions or YO Adjudications, Involving the Use or Threatened Use of a Deadly Weapon or Dangerous Instrument, or the Infliction of Physical Injury Upon Another, or Felony Offense Convictions under Articles 130 or 263 of the Penal Law or Section 255.25 of the Penal Law (which convictions need not arise out of the commission of the felony on which the current sentence is based except that in calculating the ten year period, any period of time during which the person was incarcerated shall be excluded - Category 1 (g)

B ( ) Category 2 -- Mandatory Willard DTC Program - (Includes Shock Releases)

( ) Crime of Conviction is a Penal Law Article 220 or 221 Offense Other than a Class A-I Felony

( ) Crime of Conviction is not a Penal law Article 220 or 221 Offense, and is not a VFO or Class A Felony, and the Current Sustained Violation(s) is Rule 11 or 8 (Drugs) or Special Condition - No Alcohol

Exemptions:

( ) Time Remaining on Sentence as of Warrant Lodge Date is Less than Nine Months

( ) Pending Criminal Charges as of Final Hearing Date

( ) Medical/Psychiatric Ineligibility

( ) Exceptional Mitigating Circumstances (Revoke and Restore - BOARD ACTION REQUIRED)

( ) Persistent Violators

DISTRIBUTION:
White - AREA OFFICE/BUREAU,   Green - ALDITS BUREAU/CENTRAL FILE,   Yellow - ATTORNEY,   Pink - RELEASEE,   Gold - ADMINISTRATIVE LAW JUDGE/BUREAU/CALR

[illegible] Allen  Warrant #: 226 056

…SIS AND DECISION

Parolee is pursuing 3 years to [illegible]

[illegible]

[illegible]

[illegible] 1st Violation [illegible]

[illegible]

[illegible]

[illegible] 17 years, (214 months)

Parolee pled guilty to charge #2

[illegible]

Hold to ME

Parolee will max out [illegible] custody. Therefore

Hold to MAX is warranted

A (✓) DELINQUENT TIME ASSESSMENT RECOMMENDED TO BOARD, SEE ATTACHED ADDENDUM - REASONS FOR RECOMMENDATION WHICH REQUIRE BOARD ACTION. Hold to ME

B ( ) DELINQUENT TIME ASSESSMENT IMPOSED ________ MONTHS.

C ( ) REVOKE AND RESTORE / MANDATORY WILLARD DTC PROGRAM

NOTE: Estimated delinquent time assessment expiration date: ________. As of this date you are eligible for re-release consideration by the Parole Board. This may occur while you are either in local custody or following your return to a State correctional facility. This date is not to be interpreted as an established release date.

Date: 6/1/2001

Signature: [signature]

Name: [illegible]

Title: ALJ

NOTICE: YOU HAVE THE RIGHT TO APPEAL THIS DECISION.

DISTRIBUTION: [illegible]